UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 15-5559-DMG (PLAx) | Date | December 15, 2016 |
| Title | *Christopher Phillips v. Archstone Simi Valley LLC, et al.* | Page | 1 of 12 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER RE DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS AND LANDLORD DEFENDANTS' REQUEST FOR JUDICIAL NOTICE [84, 84-2, 85]**

## I.
## PROCEDURAL BACKGROUND

On March 25, 2016, Plaintiff Christopher Phillips filed the operative Second Amended Complaint ("SAC") against Defendants Kimball, Tirey & St. John, LLP, Chris Evans, and Ashley Rossetto ("Kimball Defendants"); and Defendants Archstone Simi Valley LLC and AvalonBay Communities, Inc. ("Landlord Defendants").[1]  [Doc. # 61].  In the SAC, Phillips alleges that the Kimball Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. section 1692 *et seq.*, and that the Landlord Defendants violated (1) section 1788.30 of the California Rosenthal Act, (2) section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA") by willfully and negligently failing to provide complete and accurate information to a consumer reporting agency, and (3) section 1942.5 of the California Civil Code for retaliatory eviction. SAC ¶¶ 69–84, 93–98.

On September 2, 2016, Defendants filed the instant motions for judgment on the pleadings ("MJP") as to the FDCPA and Rosenthal Act claims, the willful FCRA claim, and Phillips' request for punitive damages on the retaliatory eviction claim.  [Doc. ## 84, 85.]  The Landlord Defendants also filed a supporting request for judicial notice ("RJN").  [Doc. # 84-2.] On September 9, 2016, Phillips filed oppositions to the Landlord MJP ("Landlord MJP Opp.") and Kimball MJP ("Kimball MJP Opp.").  [Doc. ## 86, 87.]  On September 16, 2016, Landlord Defendants and Kimball Defendants each filed a reply ("Landlord Reply" and "Kimball Reply"). [Doc. ## 90, 91.]

---

[1] Phillips also brought suit against Equifax Information Services, LLC and Fair Collections and Outsourcing of New England, Inc. ("FCO"), who are not parties to the motions before the Court.  *See* SAC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 15-5559-DMG (PLAx) | Date | December 15, 2016 |
| Title | *Christopher Phillips v. Archstone Simi Valley LLC, et al.* | Page | 2 of 12 |

## II.
## FACTUAL BACKGROUND[2]

In its February 2016 Order resolving Defendants' motions to dismiss ("MTD Order") [Doc. # 33], the Court presented extensive factual and procedural history. Here, the Court incorporates those facts and discusses only the additional facts alleged in the SAC: Phillips received numerous phone calls and three letters from Fair Collections and Outsourcing of New England, Inc. ("FCO"), which was working pursuant to an agency agreement for the Landlord Defendants. SAC at ¶¶ 48–50. Specifically, FCO "contacted Phillips by phone on numerous occasions and demanded that he pay a debt which was not owed to the Landlord defendants." *Id.* at ¶ 49. In addition, FCO sent Phillips three debt collection letters—on May 14, 2014; February 9, 2015; and March 7, 2015—demanding that he pay a debt that was not owed to the Landlord Defendants. *Id.* at ¶ 50.

The Landlord Defendants sought and received the advice and counsel of the Kimball Defendants regarding all actions taken against Phillips complained of in the SAC, "including but not limited to, the preparation, content, and service of 3-day notices, the prosecution of the unlawful detainers, and the ouster of Phillips from the premises." *Id.* at ¶ 61. Furthermore, the Kimball Defendants prepared, filed, and served on Phillips the unlawful detainers and three-day notices. *Id.* Finally, the Kimball Defendants advertise on their website that they "help their clients through each step of the eviction process," and can help "[a]void costly problems by having your written communications drafted or reviewed regularly by Kimball, Tirey & St. John." *Id.* at ¶ 61(a).

## III.
## JUDICIAL NOTICE

Federal Rule of Evidence 201 permits a court to take judicial notice of facts not subject to reasonable dispute and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 824, n.3 (9th Cir. 2011) (citing Fed. R. Evid. 201(b)). The Landlord Defendants seek judicial notice of the following documents:

---

[2] The Court takes the material facts alleged in the SAC as true and construes them in the light most favorable to the non-moving party solely for the purpose of deciding the pending MJPs, except where they contradict documents attached to the complaint or subject to judicial notice. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 15-5559-DMG (PLAx)** | Date | December 15, 2016 |
| Title | *Christopher Phillips v. Archstone Simi Valley LLC, et al.* | Page | 3 of 12 |

1. Certificate of Conversion dated February 27, 2013, and Certificate of Limited Partnership dated February 27, 2013;

2. Complaint in the Unlawful Detainer action entitled, *Archstone Simi Valley LLC v. Chris Phillips*, Ventura County Superior Court Case No. 56-2013-00435146-CL-UD-SIM ("UD No. 1"), filed April 19, 2013;

3. Plaintiff Chris Phillips' Answer to Complaint in UD No. 1, filed May 7, 2013;

4. Order issuing judgment in UD No. 1, dated July 29, 2013;

5. Complaint in the Unlawful Detainer action entitled, *Archstone Simi Valley LLC v. Chris Phillips*, Ventura County Superior Court Case No. 56-2013-00445273-CL-UD-VTA ("UD No. 2"), filed November 27, 2013.

6. Minute Order issuing judgment in UD No. 2, dated March 6, 2014;

7. Notice of Appeal filed by Plaintiff as to judgment in UD No. 2, dated March 27, 2014; and

8. Opinion and judgment of the Appellate Division in UD No. 2 appeal, dated January 6, 2015.

RJN.

"A court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986)). Documents on file in federal or state courts are considered undisputed matters of public record. *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). "[W]hen a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee*, 250 F.3d at 690.

The Court therefore **GRANTS** Defendants' request and takes judicial notice of Exhibits 1 through 8 because they are public records.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 15-5559-DMG (PLAx) | Date | December 15, 2016 |
| Title | *Christopher Phillips v. Archstone Simi Valley LLC, et al.* | Page | 4 of 12 |

## IV.
## LEGAL STANDARD

Judgment on the pleadings is properly granted only when, "taking all the factual allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Fairbanks N. Star Borough v. U.S. Army Corps. Of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008) (quoting *Dunlap v. Credit Protection Ass'n, L.P.*, 419 F.3d 1011, 1012 n.1 (9th Cir. 2005) (*per curiam*)). The standard of review under a Rule 12(b)(6) motion applies equally to motions for judgment on the pleadings. *Chavez v. United States*, 683 F.3d 1102, 1108–09 (9th Cir. 2012). Thus, the court construes the factual allegations in the pleadings in the light most favorable to the non-moving party, but it need not accept as true conclusory allegations that are contradicted by matters properly subject to judicial notice or by exhibits incorporated into the complaint by reference. *Perez v. Wells Fargo & Co.*, 75 F. Supp. 3d 1184, 1186–87 (N.D. Cal. 2014). Similarly, a pleading may be dismissed under Rule 12(c) when it asserts a legal theory that is not cognizable as a matter of law, or it fails to allege sufficient facts to support an otherwise cognizable legal claim. *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).

Upon granting a motion for judgment on the pleadings or dismissing certain claims, a court should grant leave to amend unless it "determines that the pleading could not possibly be cured by the allegation of other facts." *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## V.
## DISCUSSION

### A.     FDCPA Claims (Kimball Defendants)

The Court previously granted the Kimball Defendants' motion to dismiss as to section 1692g of the FDCPA and denied the Kimball Defendants' motion to dismiss as to sections 1692e and 1692f of the FDCPA. *See* MTD Order at 19. The Kimball Defendants now move for judgment on the pleadings as to the remaining FDCPA claims based on untimeliness and failure to state a claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 15-5559-DMG (PLAx) | Date | December 15, 2016 |
| Title | *Christopher Phillips v. Archstone Simi Valley LLC, et al.* | Page | 5 of 12 |

### 1. Statute of Limitations

Actions for violations of the FDCPA are governed by a one-year statute of limitations. 15 U.S.C. § 1692k(d). Phillips' original Complaint was filed on July 22, 2015. [Doc. # 1]. Accordingly, claims for acts predating July 22, 2014, are time-barred.

The SAC bases the FDCPA violations against the Kimball Defendants on the October 18, 2013 Three-Day Notice, the filing of UD No. 2 on November 27, 2013, and discovery in UD No. 2, all of which went to trial on February 20, 2014, with judgment entered on March 7, 2014. SAC at ¶¶ 42–53. All of those dates precede July 22, 2014.

Phillips asserts that the continuing violation doctrine should preserve his claims based on his appeal of the UD No. 2 trial court judgment, upon which the appellate court entered judgment on May 27, 2015, as well as three debt collection letters and numerous phone calls FCO, on behalf of Landlord Defendants, made to him in 2015. Kimball MJP Opp. at 3:20-4:16.

The continuing violation doctrine does not apply. The statute of limitations for an FDCPA claim based on the wrongful filing of a debt collection suit begins to run upon the filing of the suit, not the entry of judgment by an appellate court. *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997) ("The alleged violation of the Act was not a reviewing court judgment, but the bringing of the suit itself."). Moreover, FCO's 2015 debt collection letters and phone calls are insufficiently related to the 2013 Three-Day Notice and filing of UD No. 2. FCO and the Kimball Defendants are separate entities, and these are discrete and attenuated acts that do not justify lifting the protective cover of the statute of limitations to sweep in stale claims. *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) ("A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation."); *see also Joseph v. J.J. Mac Intyre Cos., L.L.C.*, 281 F. Supp. 2d 1156, 1161–62 (N.D. Cal. 2003) (continuing violation applied where defendant called plaintiff's residence over 200 times during a 19-month period).

The SAC does not sufficiently allege that the Kimball Defendants engaged in a repeated pattern of behavior akin to that described in *Joseph v. J.J. Mac Intyre Companies, L.L.C.* Therefore, the continuing violation doctrine does not apply, and the FDCPA claims against the Kimball Defendants are time-barred.

### B. California Rosenthal Act (Landlord Defendants)

The SAC alleges violations of the Rosenthal Act because the Landlord Defendants (1) prosecuted two unlawful detainer actions against Phillips; (2) attempted to collect past-due

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 15-5559-DMG (PLAx)** | Date | December 15, 2016 |
| Title | *Christopher Phillips v. Archstone Simi Valley LLC, et al.* | Page | 6 of 12 |

rent and late fees, attorney fees, court costs, and damages; (3) falsely reported damages on Phillips' credit report; and (4) caused FCO, a collection agency, to send Phillips numerous debt collection letters and phone calls to demand payment. SAC ¶¶ at 33–63. The Landlord Defendants assert that the Rosenthal Act claim fails because (1) residential rent is not a consumer credit transaction under the statute, (2) the claim is partially time-barred, and (3) the claim is factually deficient. Landlord MJP 8:27–16:21.

California's Rosenthal Act serves to "prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1. The Rosenthal Act defines "consumer debt" as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a *consumer credit transaction*." Cal. Civ. Code § 1788.2(f) (emphasis added). A "consumer credit transaction" is "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." Cal. Civ. Code § 1788.2(e). Thus, Phillips' Rosenthal Act claims turn on whether Phillips' rent payments and the associated fees and costs accrued in failing to pay rent qualify as consumer credit transactions.

    1.    **Residential Rent**

Although there is not extensive authority on whether residential rent collection qualifies as a consumer credit transaction, the district court in *Leasure v. Willmark Communities, Inc.* concluded that it does not. No. 11-CV-00443 BEN (DHB), 2013 WL 6097944, at *4 (S.D. Cal. Mar. 14, 2013). The *Leasure* court reasoned that the monthly payment of rent does not require a landlord to extend credit to her tenants. *Id.* This is consistent with the Act's legislative history and purpose, which envisions protection against debt collection practices "arising from the extension of credit" and applies to creditors and third-party collectors "such as bankers, credit unions, savings and loans, personal property brokers, industrial loan companies, and retailers." *In re Landry*, 493 B.R. 541, 555–56 (Bankr. E.D. Cal. 2013) (quoting FDCPA Bill Digest: Hearing on California SB 237 Before the Assembly Comm. on Judiciary, August 11, 1977; Cal. Dep't of Consumer Affairs, Enrolled Bill Report for SB 237, September 15, 1977) (discussing the Act's legislative history at length).

Further, the California Court of Appeals has observed that "[r]enting an apartment is not truly a credit transaction" because "[c]redit is '[t]he time that a seller gives the buyer to make the payment that is due' or '[t]he availability of funds either from a financial institution or under a letter of credit.' A landlord neither sells property on time nor makes funds available to tenants."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 15-5559-DMG (PLAx)** | Date | December 15, 2016 |
| Title | *Christopher Phillips v. Archstone Simi Valley LLC, et al.* | Page | 7 of 12 |

*Ortiz v. Lyon Mgmt. Grp., Inc.*, 157 Cal. App. 4th 604, 618–19 (2007) (quoting Black's Law Dictionary 374 (7th ed.1999)).[3]  Here, the Landlord Defendants prosecuted two unlawful detainer actions against Phillips, seeking recovery of the premises, past-due rent, attorney's fees, forfeiture of the lease agreement, and damages.  Thus, the Landlord Defendants did not grant Phillips time to make a payment in order to purchase a property, nor did they make funds available to Phillips under a letter of credit.

Phillips cites *Gouskos v. Aptos Village Garage, Inc.*, 94 Cal. App. 4th 754 (2001), for the proposition that a consumer credit transaction occurs anytime a consumer acquires something without paying for it.  Landlord MJP Opp. at 2:15–18, 3:12–4:3.  In *Gouskos*, an autobody shop sold the plaintiff's car at a lien sale after the plaintiff failed to pay for repairs.  *Gouskos*, 94 Cal. App. 4th at 758.  When the plaintiff sued under the Rosenthal Act for unlawful collection of payment for repairs and storage fees, the court rejected the claim because the repairs did not constitute consumer credit transactions.  *Id.* at 757, 759.  The court explained that "a consumer credit transaction means a transaction where a person *acquires* property or services *on credit*.  In other words, there is a consumer credit transaction when the consumer acquires something without paying for it."  *Id.* at 759 (construing Cal. Civ. Code § 1788.2(e)).  Because the plaintiff did not take possession of the car, he did not acquire property or services, which precluded his Rosenthal Act claim.  *Id.* at 760.  Phillips argues accordingly that "because he acquired something, in this case continued possession of the premises, without paying for it—[monthly rent was] a credit transaction."  Landlord MJP Opp. at 5:7–5:8.

*Gouskos* does not help Phillips.  First, the *Gouskos* plaintiff's non-acquisition of property makes the case distinguishable and altogether inapplicable.  Second, as explained, Phillips acquired the right to occupy the premises *because* he paid for that right in advance; Phillips has not alleged an on-credit acquisition as of the lease's execution.[4]  Moreover, Phillips only

---

[3] *Ortiz* determined that the Investigative Consumer Reporting Agencies Act (ICRAA) was unconstitutionally vague as to the distinction between creditworthiness information and character information in a tenant screening report.  157 Cal. App. 4th at 619.  Although *Ortiz* did not discuss the Rosenthal Act, its analysis is instructive as to whether residential rent collection should qualify as a consumer credit transaction.

[4] Additionally, it is questionable whether Phillips *acquired* property at all, within the meaning of California Civil Code Section 1788.2(e).  As the Landlord Defendants argue, "[a] lease grants the exclusive possession and use of property to the tenant against the world, including the owner . . . . *However, it does not transfer any title interest in the leased premises to the tenant*."  Miller & Star, California Real Estate § 34:1 (4th ed. 2016) (emphasis added) (footnotes omitted).  Under a lease, moreover, "the tenant, rather than the fee title owner, *uses and controls* the leased premises.  The tenant does not receive any interest in the fee title; the fee title remains with the owner of the property, and the tenant has no right to the fee title in the absence of an option to purchase."  *Id.* at § 34:3 (emphasis added) (footnotes omitted).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 15-5559-DMG (PLAx)** | Date | December 15, 2016 |
| Title | *Christopher Phillips v. Archstone Simi Valley LLC, et al.* | Page | 8 of 12 |

continued to occupy the premises without payment because he refused to leave—not because he and his landlord arranged for Phillips' extended, unpaid stay, and a credit transaction is not retroactively created by virtue of the consumer's—if Phillips even is a consumer as envisioned under the Act—later failure to pay. This timing is significant because consent is essential to the consumer credit transaction. *See, e.g.*, *Turner v. Cook*, 362 F.3d 1219, 1227 (9th Cir. 2004) ("[T]he [FDCPA] is limited in its reach 'to those obligations to pay arising from *consensual* transactions, where parties negotiate or contract for consumer-related goods or services.'" (emphasis added) (quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997))).[5]

Accordingly, the Court concludes that residential rent collection is not a consumer credit transaction protected under the Rosenthal Act, and the Landlord Defendants are entitled to judgment as a matter of law on this claim.

**2.     Fees and Costs**

Phillips also asserts that the Landlord Defendants' attempt to recover attorney's fees, court costs, damages, and late fees constitute separate consumer credit transactions and therefore additional violations of the Rosenthal Act. *See* Landlord MJP Opp. at 5:8–12. For support, he relies on *Koller v. West Bay Acquisitions, LLC*, No. C 12-00117 CRB, 2012 WL 2862440 (N.D. Cal. July 11, 2012).[6]

In *Koller*, the plaintiff paid a monthly fee to receive unlimited video rentals at Hollywood Video. 2012 WL 2862440, at *2. Hollywood Video also required the plaintiff to provide a credit card or bank account to which it could charge unpaid fees in the event that a video was not returned. *Id.* Years later, the plaintiff received a debt collection notice from the defendant collection agency claiming nearly $50 of outstanding unpaid late fees for video rentals, and, believing he had no outstanding debts, plaintiff filed suit under the Rosenthal Act. *Id.* Pointing to *Gouskos*' preliminary characterization of the term "on-credit" as a transaction in which the

---

[5] Analysis regarding FDCPA claims is persuasive because the Rosenthal Act is California's version of the FDCPA, which "mimics or incorporates by reference the FDCPA's requirements . . . and makes available the FDCPA's remedies" as independent violations. *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012) (citing Cal. Civ. Code § 1788.17). Further, the term "consumer credit transaction" under the Rosenthal Act is defined using substantially identical language to the definition of the term "debt" under the FDCPA. *Compare* Cal. Civ. Code § 1788.2(e) *with* 15 U.S.C. § 1692a(5).

[6] The Court notes Phillips' warning of the "dangers inherent in citations to unpublished district court decisions," which may "result[] in a propagation of blind 'look what they did' legal practice," while also taking into consideration Phillips' reliance on *Koller*, an unpublished district court decision. *See* Landlord MJP Opp. at 3, n 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 15-5559-DMG (PLAx)** | Date | December 15, 2016 |
|---|---|---|---|
| Title | *Christopher Phillips v. Archstone Simi Valley LLC, et al.* | Page | 9 of 12 |

consumer acquires something without paying for it, the court concluded that the $50 in late fees or penalties constituted a credit transaction because the plaintiff "allegedly acquired the video for a longer period of time than he paid for, . . . [which] suggest[ed] that the video was acquired and or retained on credit." *Id.* at *7.

Phillips again relies on an inapposite case. Both the relationship between the *Koller* plaintiff and Hollywood Video, and the video rental transaction itself, are worlds away from Phillips' landlord-tenant relationship and the residential rent arrangement: (1) Hollywood Video was a retailer, the type of creditor that the California Legislature had in mind in passing the Act; (2) the video-rental arrangement allowed the plaintiff to rent as many videos as possible in one month's time for a flat fee, in essence creating a consensual relationship wherein the plaintiff acquired goods without payment; and (3) the *Koller* plaintiff provided the store with bank and credit information in case he failed to return a video, again showing the consensual nature of the on-credit video-rental arrangement. As explained above, none of these elements of a consensual on-credit transaction are present here.

Although *Koller* analogized video late fees and penalties to dishonored checks, 2012 WL 2862440 at *7 ("Like a dishonored check, penalties and late fees arise after what both parties thought was a completed transaction in which something had been purchased."), the court explained that authority in this Circuit is split on whether dishonored checks constitute consumer credit transactions under the FDCPA and ultimately concluded the late video fees were consumer credit transactions under *Gouskos*' on-credit definition. *See id.* Given the significant weight of authority holding that late fees are not actionable under the Rosenthal Act, the Court will not conclude otherwise on the basis of a dishonored check analogy. *E.g.*, *Udo v. Kelkris Associates, Inc.*, 2012 WL 5985663, at *2 (S.D. Cal. Nov. 29, 2012) (dismissing Rosenthal Act claim arising from the attempted collection of unpaid fees and storage costs associated with the towing and storage of plaintiff's vehicle); *Jachimiec v. Regent Asset Mgmt. Sols., N.A.*, 2011 WL 2160661, at *2 (S.D. Cal. May 26, 2011) (holding that plaintiff failed to allege a consumer credit transaction under the Rosenthal Act arising from a "continuous overdraft fee" on plaintiff's checking account).

Finally, Phillips' assertion that the attempted collection of attorney's fees, court costs, and damages constitutes a consumer credit transaction is without merit, particularly in light of California law allowing the prevailing party in any action on contract to recover costs including attorney's fees, court costs, and damages. *See* Cal. Civ. Code § 1717. Because these fees and costs arose out of collection efforts related to Phillips' residential rent payments, there is no consumer credit transaction to bring them within the scope of the Rosenthal Act.

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 15-5559-DMG (PLAx)** | Date | December 15, 2016 |
|---|---|---|---|
| Title | *Christopher Phillips v. Archstone Simi Valley LLC, et al.* | Page | 10 of 12 |

Thus, the Landlord Defendants' collection activities for late payments and other costs and fees are not additional violations of the Rosenthal Act, and they are entitled to judgment as a matter of law on that claim.

### C. Willful FCRA Violations (Landlord Defendants)

Under 15 U.S.C. section 1681n(a), a willful violation of the FCRA may warrant both statutory and punitive damages. 15 U.S.C. § 1681n(a). "A willful violation includes both knowing violations and actions in 'reckless disregard of a requirement' of the FCRA." *Starkey v. Experian Info. Sols., Inc.*, 32 F. Supp. 3d 1105, 1111 (C.D. Cal. 2014) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007)).

Phillips asserts that the Landlord Defendants caused a collection item to be placed on his credit reports that falsely alleged he owed over $30,000 in past-due rent. SAC at ¶ 51. He seeks punitive damages, arguing that the Landlord Defendants' willfully violated section 1681s-2(b) of the FCRA by failing to conduct an investigation with respect to the disputed credit information and failing to report inaccuracies to the Credit Reporting Agency, among other things. *Id.* at ¶¶ 77–79. In support, he contends that the Landlord Defendants "were aware that the wrongful acts described in this lawsuit would occur and agreed and intended that the wrongful acts be committed in furtherance of [a] conspiracy." SAC ¶ 31. He also points to the Landlord Defendants' wrongful prosecution of two unlawful detainer actions, their attempted collection of rent and fees in excess of $30,000 (which, according to Phillips, was not actually past due), and their refusal to accept rent tendered by Phillips during the first unlawful detainer action as further evidence of the Landlord Defendants' intent to harm him. Landlord MJP Opp. at 9:17–23.

Taking these allegations as true, the Landlord Defendants' violations of the FCRA were both knowing and reckless, entitling Phillips to punitive damages. *See Safeco*, 551 U.S. at 48, 68. Accordingly, their MJP is **DENIED** as to this claim.

### D. Punitive Damages for Retaliatory Eviction (Landlord Defendants)

Under California law, it is unlawful for a lessor to "recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services within 180 days . . . [a]fter the entry of judgment . . . when in the judicial proceeding . . . the issue of tenantability is determined adversely to the lessor." Cal. Civ. Code § 1942.5(a)(5). Under section 1942.5(f), up to $2,000 in punitive damages may be awarded "for each retaliatory act where the lessor or agent has been guilty of fraud, oppression, or malice with respect to that act." Cal Civ. Code § 1942.5(f)(2). To show malice, "[t]he defendant must intend to cause

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 15-5559-DMG (PLAx)** | Date | December 15, 2016 |
| Title | *Christopher Phillips v. Archstone Simi Valley LLC, et al.* | Page | 11 of 12 |

injury to the plaintiff or the defendant must engage in despicable conduct with a willful and conscious disregard of the rights of the plaintiff." *George F. Hillenbrand, Inc. v. Ins. Co. of N. Am.*, 104 Cal. App. 4th 784, 817 (2002). The Landlord Defendants argue that Phillips has not made this showing in his pleadings. Landlord MJP at 17.

Here, the SAC alleges that the Landlord Defendants commenced the second unlawful detainer action in retaliation for Phillips' successful defeat of the first unlawful detainer action, which falls within the 180-day statutory time period. Specifically, Phillips claims that the Landlord Defendants "acted in a tortious, knowing, intentional, and willful manner or in conscious disregard of [his] rights." SAC ¶ 98. Although this allegation is conclusory, Phillips also contends in support that the Landlord Defendants pursued the second detainer action knowing full well that he did not owe past due rent, as per the first unlawful detainer judgment. *Id.* at ¶ 31; *see also id.* at ¶¶ 35 (discussing the first action's judgment), 45 (discussing the Landlord Defendants' knowledge and intent during the second detainer action), 62–63 (alleging the Landlord Defendants sought to evict Phillips even after the second detainer action). Further, he states that "[a]cting in the manner which they did to dispossess Phillips from his home and subject[] him to months of litigation and ongoing debt collection activities fit[s] the bill of malice and oppression." *Id.*

The Court agrees. As alleged in the SAC, the Landlord Defendants knew that Phillips did not owe back rent, but they sought to evict him (or coerce him to vacate the premises by threat of litigation) anyway. These allegations are not "merely consistent with the hypothesis of malice" but rather "inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing." *Food Pro Intern., Inc. v. Farmers Ins. Exchange*, 169 Cal. App. 4th 976, 994 (2008) (emphasis added) (quoting *Tomaselli v. Transamerican Ins. Co.*, 25 Cal. App 4th 129, 1288 n.14 (1994)).

Accordingly, the Landlord Defendants' MJP is **DENIED** as to Phillips' action for punitive damages for retaliatory eviction.

E.     Leave to Amend

For those claims that do not survive the motions for judgment on the pleadings, the Court will not grant leave to amend because the rulings are based on the Court's interpretation of the law—such that the allegation of additional facts would be futile.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 15-5559-DMG (PLAx) | Date | December 15, 2016 |
|---|---|---|---|
| Title | *Christopher Phillips v. Archstone Simi Valley LLC, et al.* | Page | 12 of 12 |

## VI.
## CONCLUSION

In light of the foregoing, the Court issues the following orders:

1. The Kimball Defendants' MJP is **GRANTED** with prejudice as to all FDCPA claims;

2. The Landlord Defendants' MJP is **GRANTED** with prejudice as to all Rosenthal Act claims;

3. The Landlord Defendants' MJP is **DENIED** as to Phillips' request for punitive damages under the FCRA and Civil Code section 1942.5.

**IT IS SO ORDERED.**