1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CHRISTOPHER PHILLIPS,

                  Plaintiff,

      v.

ARCHSTONE SIMI VALLEY LLC, et al.,

                  Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV 15-5559 DMG (PLAx)

**ORDER RE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [94, 96, 100, 101, 102]**

     This matter is before the Court on several cross-motions for summary judgment or partial summary judgment, and supporting requests for judicial notice:

1. Plaintiff Christopher Phillips' Motion for Partial Summary Judgment ("Phillips MSJ") [Doc. # 94];

2. Defendant Equifax Information Services LLC's ("Equifax") Motion for Summary Judgment ("Equifax MSJ") [Doc. # 96];

3. Defendants AVB Simi Valley LP[1] ("Archstone") and AvalonBay Communities, Inc. ("Avalon" and, collectively, "Landlord Defendants") Motion for Summary

---

[1] Formerly known as Archstone Simi Valley LLC.

Judgment ("Landlord MSJ") [Doc. # 100], and Request for Judicial Notice ("Landlord RJN") [Doc. # 100-3];

4. Defendants Kimball, Tirey & St. John, LLP; Chris Evans; and Ashley Rossetto's (collectively, the "Kimball Defendants") Motion for Summary Judgment ("Kimball MSJ") [Doc. # 101]; and

5. Defendant Fair Collections & Outsourcing of New England, Inc.'s ("FCO") Motion for Summary Judgment ("FCO MSJ") [Doc. # 102], and Request for Judicial Notice ("FCO RJN") [Doc. # 102-2].[2]

The Court has duly considered the parties' written submissions and the evidentiary record and renders the following decision.

# I.

# PROCEDURAL BACKGROUND

In his Second Amended Complaint ("SAC") [Doc. # 61], Phillips brought suit alleging several violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; the California Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788 *et seq.*; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1687 *et seq.*; and one claim for retaliatory eviction, Cal. Civ. Code § 1942.5.  All claims relate to Phillips' lease of an apartment, failure to pay rent, and two subsequent unlawful detainer actions filed against him in 2013.

The Landlord and Kimball Defendants moved for judgment on the pleadings ("MJP"), and while those motions were pending, Phillips and all Defendants filed their respective motions for summary judgment.  The Court recently issued an Order ruling on the MJPs ("MJP Order"), which resolved several of the claims now pending before the Court.  [Doc. # 126.]

---

[2] FCO joined in the Equifax MSJ and the Kimball MSJ.  [Doc. ## 103, 105, 106.]  By Notice of Errata [Doc. # 107], FCO indicated that it withdrew its earlier Joinder in the Landlord MSJ [Doc. # 104].

## II

## JUDICIAL NOTICE

The Landlord Defendants and FCO ask this Court to take judicial notice of several documents, which constitute either public records or court filings.  *See* Exhibits 1–10 to Landlord RJN [Doc. # 100-4–100-13]; Exhibits 1–6 to FCO RJN [Doc. # 102-3–102-8].  Such documents are proper subjects of judicial notice.  Fed. R. Evid. 201; *Lee v. City of Los Angeles*, 250 F.3d 668, 688–90 (9th Cir. 2001).  The Court thus **GRANTS** Defendants' request.

## III.

## FACTUAL BACKGROUND

The Court sets forth the following material facts.[3]  These facts are uncontroverted unless otherwise indicated.

At all relevant times, Archstone owned a multi-unit residential apartment building in Simi Valley, California.  Phillips to Landlord at ¶ 2.  In July 2009, Phillips and Archstone entered into a written lease agreement for one of the building's apartment units.  *Id.* at ¶ 1.  This dispute concerns Phillips' rent payments for that unit from 2013 through 2014.

When AvalonBay acquired Archstone in February 2013, it became the property manager of the apartment building.  *Id.* at ¶ 30–33.  As manager, AvalonBay established the policies and procedures that govern the property, including rent collection.  *Id.* at ¶¶ 34, 37.  With their motions, Phillips and the Landlord and Kimball Defendants submitted extensive evidence on the substance of the relevant lease agreements,

---

[3] The parties have each submitted Statements of Uncontroverted Facts ("SUF").  *See* Doc. ## 94-1 ("Phillips SUF"), 96-1 ("Equifax SUF"), 100-2 ("Landlord SUF"), 102-1 ("FCO SUF").  The parties have also submitted responsive controverting evidence or objections.  *See* Doc. ## 109-2 ("FCO to Phillips"), 110-1 ("Phillips to Equifax"), 111 ("Phillips to FCO"), 113 ("Phillips to Landlord"), 117-1 ("Landlord to Phillips").  To the extent that objections or disputes are lodged against any party's SUF or evidence, and the Court does not rely on the objected-to submission, the Court does not rule on the objection.

AvalonBay's rent payment policies, and Phillips' payment and attempted payment history, much of which is irrelevant to the instant disposition.

## A.    Phillips' Rent and the Unlawful Detainer Actions

It is undisputed that from April 2013 through March 2014, when he vacated the apartment, Phillips did not pay rent.  Phillips to Landlord at ¶¶ 109, 130.  The evidence presented shows that Phillips attempted to pay rent for April, May, September, and October 2013, but the payments were not accepted and some appear to have been returned to him.  Phillips to Landlord at ¶¶ 47, 49, 51 (April); *id.* at 68, 70–71 (May); *id.* at 86–87, 89–90 (September); *id.* at 91–92 (October); Phillips Depo. at 47–48, 50–51[4] (April) [Doc. # 100-23]; *id.* at 78 (May).  Phillips did not believe he was legally obligated to pay rent from April through August 2013, and he cashed in and spent the money from the checks he had submitted (and which were returned) for those months.  Phillips to Landlord at ¶¶ 85, 95–96.

On April 9, 2013, having not received that month's rent payment, AvalonBay issued a Three-Day Notice to Pay Rent or Quit.  *Id.* at ¶ 46.  On April 19, 2013, when AvalonBay did not receive the April rent payment in its desired amount, form, or method, Archstone filed an unlawful detainer action ("UD-1") against Phillips.  *Id.* at ¶ 58; *see* Exhibit 14 to Jett Decl. at 51–53 [Doc. # 100-18] (AvalonBay records regarding Phillips' payment method and AvalonBay's payment policies and preferences).  UD-1 sought $1,505 in past-due rent, attorney's fees,[5] forfeiture of the lease agreement, and damages

---

[4] In this Order, citations to deposition testimony follow the pagination of the docket file.  For example, the relevant portion of Phillips' deposition testimony falls on pages 122–23 and 125–26 of the excerpted deposition, but on pages 47–48 and 50–51 of the document filed on ECF at docket number 100-23.

[5] AvalonBay's "standard lease" contains a fee provision that permits AvalonBay, in the case of default, to pursue "all costs and fees, including attorney's fees, litigation and collection costs" in connection with enforcing the lease.  *See* Jett Decl. at ¶¶ 19–20 [Doc. # 100-14]; Exhibit 17 to Jett Decl. [Doc. # 100-21].  Phillips' dispute of this fact is puzzling; the legality of a lease provision authorizing the collection of attorney's fees in connection with an unlawful detainer (or other) action does not affect the existence of such a provision.  *See* Phillips to Landlord at ¶ 61.  The 2012–2013 lease does not contain an attorney's fees provision, however, and AvalonBay contends it sought such fees under UD-1 "by mistake."  Landlord SUF at ¶¶ 64–65; Jett Decl. at ¶ 21.

in the amount of $50.16 per day from May 1, 2013 forward, for each day Phillips remained in possession of the premises. Phillips to Landlord at ¶ 60; Exhibit 2 to Landlord RJN. In pursuing the action, law firm Defendant Kimball Tirey & St. John, LLP represented Archstone. Phillips to Landlord at ¶ 59.

In May 2013, despite UD-1's pendency, Phillips and Archstone entered into a lease arrangement for the 2013–2014 year, but the parties dispute elements of the arrangement. *See* Phillips to Landlord at ¶¶ 73; Exhibit A to Strickland Decl. at 234–35 [Doc. # 100-23] (lease renewal correspondence, including monthly rent costs); Phillips Depo. at 39–42 (testimony regarding renewal and monthly rent costs); Jett Decl. at ¶ 18 (existence of lease agreement).

On July 18, 2013, a trial occurred in UD-1, and the court issued a judgment in Phillips' favor on August 29, 2013.[6] Phillips to Landlord at ¶ 81; Exhibit 4 to Landlord RJN ("UD-1 Judgment") at 1 [Doc. # 100-7]. The court also determined that the amount of "past due rent," "hold over damages," and "attorney fees" was "$0.00." UD-1 Judgment at 1.

On or about October 18, 2013, after rejecting Phillips' September and October payments, AvalonBay again recorded a Three-Day Pay Rent or Quit Notice. Phillips to Landlord at ¶ 97. AvalonBay sought past-due rent from April through October 2013, totaling $11,660. *Id.* at ¶ 98.

On November 27, 2013, Archstone filed a second unlawful detainer action ("UD-2") against Phillips. *Id.* at ¶ 99. This action sought possession of the apartment, past-due rent from April through October 2013, attorney's fees, forfeiture of the agreement, and damages in the amount of $62.66 per day from November 1, 2013 until Phillips leaves the premises. *Id.* at ¶ 101. Kimball Tirey & St. John, LLP represented Archstone in this action as well. *Id.* at ¶ 104.

---

[6] The parties submit that the UD-1 Judgment was entered on August 22, 2013, but the date on the Judgment itself states otherwise.

During the course of UD-1 and UD-2, Archstone lease employees were kind to Phillips and expressed sympathy toward him in their interactions. *Id.* at ¶ 111.  When Phillips spoke with AvalonBay employees in the Virginia Beach office, he was told that the employees could not speak directly to him because the matter was "in 'legal'" and, because he was represented by counsel, his attorney would have to communicate with AvalonBay. *Id.* at ¶¶ 113–17.

The court held a trial on February 20, 2014, and entered judgment in Archstone's favor on March 7, 2014.  *Id.* at ¶¶ 106–107.  The court rejected Phillips' res judicata and collateral estoppel arguments and concluded that Archstone was entitled to possession of the premises, past-due rent ($11,660), holdover damages ($7,080.58), and costs and attorney's fees to be determined "by way of a memorandum of costs" not in the record.  Exhibit 6 to Landlord RJN ("UD-2 Judgment") at 1–2 [Doc. # 100-9].   Phillips to Landlord.  That same month, Phillips appealed the UD-2 judgment.  Phillips to Landlord at ¶ 122.

On January 6, 2015,[7] the appellate court reversed and vacated the judgment "in its entirety" and ruled in favor of Phillips, ordering that Archstone "take nothing [from Phillips] by its [UD-2] complaint," and awarding costs to Phillip.  Exhibit 8 to Landlord RJN ("Appellate Decision") at 9 [Doc. # 100-11].  The court reasoned that Archstone could not use UD-2 to collect back rent denied to it in the UD-1 Judgment on res judicata and collateral estoppel grounds, but the court rejected Phillips' argument that res judicata and collateral estoppel barred Archstone's action for unpaid rent damages accrued after UD-1 because "a tenant's obligation to pay rent and the landlord's right to seek possession of the premises in the event that rent is not paid continue so long as the tenant occupies the premises."  *Id.* at 2.  Rather than using an unlawful detainer action to pursue past-due rent, "Archstone's remedy as to the rent damages denied to it in the prior

_____

[7] The Landlord Defendants submit, and Phillips states it is "undisputed," that the appellate judgment was entered on May 27, 2015, Landlord SUF at ¶ 127, but the appellate decision itself is an "Opinion and Judgment" and is dated as filed on January 6, 2015.

unlawful detainer action is to seek back due rent damages in a separate civil action pursuant to Civil Code[] section 1951.2." *Id.*   The court concluded, however, that Phillips' attempt to pay rent, and Archstone's rejection of those tenders, were "fatal to the [UD-2] [J]udgment." *Id.*   Ultimately, the Court held that "the [UD-2] [J]udgment [was] not supported and [was] contradicted by the *undisputed substantial evidence that Phillips did not breach the lease.*" *Id.* at 9 (emphasis added).

**B.    Debt Collection and Credit Reporting**

On or about May 13, 2014, AvalonBay placed Phillips' account into collection with its vendor FCO, a debt collector. *Id.* at ¶ 131; FCO SUF at ¶ 6.   The debt initially sought was $31,147.25. *See* Exhibit B to Sobata Decl. at 4 [Doc. # 102-15].   When AvalonBay referred Phillips' account to FCO, FCO was not aware that Phillips had appealed UD-2.   FCO SUF at ¶ 7.[8]

From May 14, 2014 through April 22, 2015, FCO called and sent letters to Phillips to collect the debt, including letters sent on May 14, 2014 and March 7, 2015.[9]   FCO SUF at ¶ 8; Exhibit 9 to Phillips MSJ at 2–5 [Doc. # 95-10].   FCO's records of collection activity on Phillips' account show that, prior to July 22, 2014, FCO made several collection attempts via telephone on May 14 but otherwise contacted Phillips' attorney directly through July.   Exhibit A to Sobata Decl. at 3–5 [Doc. # 102-14].   After July 22, 2014, phone calls in connection with his account were made on July 25, 2014; January 16, 22, 23, and 27 of 2015; February 9, 11, 16, 17, 18, and 23 of 2015; March 18, 2015; and April 9, 14, and 22 of 2015. *Id.* at 5–7, 9–10.   Some of these phone calls were made

---

[8] As President of FCO, Michael Sobata has access to and control over FCO's records concerning Phillips' debt, and he therefore has personal knowledge of the statements set forth in his declaration. Sobata Decl. at ¶¶ 1–2 [Doc. # 102-13].   Accordingly, Phillips' objection to FCO SUF ¶ 7 is **OVERRULED**. *See* Fed. R. Evid. 901.   Furthermore, FCO's obligation, if any, to ensure that debts referred to it for collection are valid and accurate does not affect whether, at the time Phillips' debt was first referred to the agency, FCO knew about the UD-2 appeal. *See* Phillips to FCO at ¶ 7.

[9] The Landlord Defendants had no role in the form or substance of FCO's collection activities, and FCO did not need the Landlord Defendants' approval for such communications.   Landlord SUF at ¶¶ 159–61.

to Phillips, some to relatives or associates of Phillips, and some to Phillips' employer. *See id.* at 3–10; Sobata Depo. at 44–45. Phillips testified that after March 2015, he received no further phone calls or letters from FCO regarding the debt.[10] Phillips to Landlord at ¶¶ 156–57.

On January 16, 2015, FCO received an email from AvalonBay informing the agency that the appellate court had reversed the UD-2 Judgment. FCO SUF at ¶ 11; Sobata Decl. at ¶ 9 [Doc. # 102-13]; Exhibit 9 to Phillips MSJ at 28 ("January AvalonBay Email") [Doc. # 95-10]. AvalonBay advised FCO that the debt could be pursued as a nonjudgment collection, and AvalonBay reduced the balance owed. FCO SUF at ¶ 11.

On January 22, 2015, Phillips requested proof of the debt from FCO, which was emailed to him on February 9, 2015 along with another letter seeking to collect the debt. *Id.* at ¶¶ 12–13; *see also* Exhibit B to Sobata Decl. ("FCO Email Breakdown") [Doc. # 102-15]. On March 7, 2015, FCO sent Phillips a collection letter regarding the now $25,294.28 debt, which related that FCO would accept $15,176.57 to settle the outstanding amount due. *Id.* at ¶ 14; Exhibit C to Sobata Decl. at 2 [Doc. # 102-16].

FCO was permitted, but not required, to report to credit reporting agencies regarding accounts it serviced. Phillips to Landlord at ¶ 131. FCO reported Phillips' debt to credit reporting agencies, including Equifax. FCO SUF at ¶ 9; Equifax SUF at ¶ 4.

Equifax has several procedures in place to determine that the data furnishers from whom it collects credit information are reliable sources of information, such as onsite visits, entering into enforceable subscriber agreements, and requiring the furnishers to certify the accuracy of their information. Equifax SUF at ¶¶ 11–15. It also maintains procedures to prepare accurate credit reports, such as computerized quality checks that compares the submitted data with expected norms based on past experiences with the

---

[10] No one at Phillips' residence answered the April 2015 phone calls, and there is no indication that FCO left messages. *See* Exhibit A to Sobata Decl. at 10.

furnisher.  *Id.* at ¶¶ 10, 17–19.[11]  Equifax has determined, through these procedures, that FCO is a reliable source of credit information.  *See id.* at ¶ 38.[12]  FCO periodically reports information to Equifax using an industry standard format, and Equifax performs quality checks on all of FCO's furnished data before loading that information into Equifax's consumer database.  *Id.* at ¶ 39.

In late January 2015, Phillips obtained his Equifax credit report, which showed that he had over $30,000 in debt.  Equifax SUF at ¶¶ 5–6.  On or about April 7, 2015, Phillips (through his attorney) contacted Equifax by mail to dispute the AvalonBay debt and to request that Equifax remove the debt from his credit report.  *See* Exhibit D to Sobata Decl. at 2 [Doc. # 102-17].  Equifax received the dispute letter on April 12, 2015.  Equifax SUF at ¶ 41.  Equifax, through its vendors, representatives, and independent contractors, reviewed Phillips' dispute and conducted an investigation.  *See* Smith Depo. at 21–24, 35–38 [Doc. # 110-4]; Phillips to Equifax at ¶¶ 23, 27–29, 34–37, 40.  For example, on April 16, 2015, Equifax sent to FCO, through an electronic system by which reporting and collection agencies communicate with one another, notice of the dispute, and requested that a response be submitted by May 6, 2015.  Smith Depo. at 33–35; Smith Decl at ¶ 42.  On April 17, 2015, Equifax sent Phillips' counsel a letter, alerting the attorney that the agency was investigating the dispute and that Phillip's credit file had been updated accordingly.  Smith Decl. at ¶ 43; Exhibit C to Smith Decl. [Doc. # 96-2].  At that time, Equifax also requested Phillips' address because the attorney's letter did not

---

[11] Phillips' objections to Equifax SUF ¶¶ 10–12 are **OVERRULED** insofar as Phillips objects to the existence of Equifax's procedures to assure reporting accuracy and to determine furnisher reliability. The existence of such procedures is not, as Phillips objected, a legal conclusion, and Phillips does not dispute the procedures Equifax asserts it has in place.  *See* Phillips to Equifax SUF at ¶¶ 10–15.

[12] Phillips' objection for lack of foundation is **OVERRULED**.  Pamela Smith is a Legal Support Associate with Equifax and has personal knowledge of the substance of her declaration testimony. Accordingly, she can attest to the internal decisions Equifax has made regarding its data furnishers.  *See* Fed. R. Evid. 901.  Moreover, whether FCO *is* a reasonable source of information is a distinct inquiry from whether Equifax, through its procedures, has *determined* that it is.

provide it.  Smith Decl. at ¶ 43; Exhibit C to Smith Decl.  Equifax received a response from Phillips' attorney on May 10, 2015.  Smith Decl. at ¶ 48; Exhibit C to Smith Decl.

FCO received notice of the credit dispute on April 23, 2015.  Sobata Decl. at ¶ 13; Exhibit A to Sobata Decl. at 10–11.  Thereafter, FCO conducted an investigation into Phillips' dispute, which included reviewing the documents enclosed with his dispute (including the UD-2 appeal) and contacting AvalonBay to request information regarding the debt.  FCO SUF at ¶ 16;[13] Exhibit D to Sobata Decl.  On May 5, 2015, FCO responded to Equifax, directing that the FCO account be deleted from the credit report.  Smith Decl. at ¶ 44 [Doc. # 96-2]; Exhibit B to Smith Decl. [Doc. # 96-2].  Equifax contends it deleted Phillips' account that day.  Smith Decl. at ¶ 45.  On May 13, 2015, Equifax sent Phillips a copy of its investigation results.  Smith Decl. at ¶ 48; Smith Depo. at 59–60.

FCO took no further action to collect the past-due rent after May 12, 2015.  Sobata Depo. at 66.  FCO's records appear to show that Phillips' credit status was changed to have a zero balance for the AvalonBay debt on May 19, 2015.  *See* Sobata Depo. at 20–21, 68 [Doc. # 95-11]; Exhibit A to Sobata Decl. at 12.[14]

Phillips filed suit on July 22, 2015.  Phillips to Landlord at ¶ 145.  As of December 2015, Phillips had not applied for credit, and was not denied credit, for the past five years.  Equifax SUF at ¶ 52.

---

[13] Phillips' objection to FCO SUF ¶ 16 is **OVERRULED** for the reasons stated in footnote 8. Further, the supporting documents show that FCO investigated the dispute.  *E.g.*, Exhibit A to Sobata Decl. at 11.

[14] FCO's internal records do not show that the Phillips account has a zero balance, but rather that his credit status (as reported to the credit bureau) shows either a zero balance for the AvalonBay debt, or that the collection account for that debt has been deleted.  Sobata Depo. at 68, 80–81.  FCO's account records also reflect this distinction, as they show that after May 19, 2015, AvalonBay communicated with FCO regarding Phillips' past-due rent.  Exhibit A to Sobata Decl. at 12; Sobata Depo. at 68–70.  In any case, FCO submits, and Phillips does not controvert, that collection activity ceased in May 2015.

# IV.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When faced with cross-motions for summary judgment, the Court considers each motion on its own merits to determine whether the summary-judgment standard of Rule 56 is satisfied. *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." *Id.*

# V.

# DISCUSSION

Rather than address the motions by party, the Court addresses the motions first by claims and then parties, where appropriate.

## A.    FDCPA Claim Against FCO[15]

Phillips' cause of action against FCO for violations of the FDCPA stems from his assertion that the debt FCO sought to collect, including attorney's fees, was "invalid" and "not owed" because Phillips won UD-1 and the UD-2 appeal.  SAC at ¶ 49; Phillips MSJ at 16–17.  Specifically, he contends that FCO violated 15 U.S.C. sections 1692e(2), 1692e(5), 1692f(1), and 1692d.  SAC at ¶¶ 49–53.[16]  Both Phillips and FCO move for summary judgment on this issue.  Phillips MSJ at 7; FCO MSJ at 8.

### 1.    Statute of Limitations

The FDCPA is subject to a one-year statute of limitations.  15 U.S.C. § 1692k(d). Because Phillips filed suit on July 22, 2015, all collection activity prior to July 22, 2014 is time-barred unless the continuing violation doctrine applies in this case.  *See Joseph v. J.J. Mac Intyre Cos.*, 281 F. Supp. 2d 1156, 1160 (N.D. Cal. 2003).  For the following reasons, the Court concludes that it does not.

---

[15] The Court's MJP Order dismissed the FDCPA cause of action as to the Kimball Defendants. MJP Order at 4–5, 12. Even prior to that Order, the Court dismissed the FDCPA cause of action as to the Landlord Defendants because they do not constitute "debt collectors" under the Act.  *See* Motion to Dismiss Order at 10–11 [Doc. # 33].  Further, the SAC does not bring a cause of action under the FDCPA against the Landlord Defendants.  *See* SAC at ¶ 70 ("This cause of action [Violation of the FDCPA] is asserted against the Kimball [D]efendants, FCO, and Does 1–10.").  The Court therefore need not address Phillips' arguments regarding the Landlord Defendants' FDCPA liability.  *See* Phillips MSJ at 10–17.

[16] The Court rejects FCO's argument that Phillips' FDCPA claims against FCO are exclusive to the collection of attorney's fees.  *See* SAC at ¶¶ 50 ("FCO . . . sent several debt collection letters each of which demanded that he pay a debt which was not owed to the Landlord [D]efendants in the amount of $31,147.25 (as per letter, May 14, 2014), $25,294.28 (as per letter, February 9, 2015), and $15,176.57 (as per letter, March 7, 2015)."), 50.a ("A debt collector may not make false, deceptive, or misleading representations concerning the character, amount, or legal status of the debt it claims is due from the debtor." (citing 15 U.S.C. § 1692e(2))).

> The continuing violation doctrine applies when
>
> the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts.  If there is a pattern, then the suit is timely if 'the action is filed within one year of the most recent date on which the defendant is alleged to have violated the FDCPA', and the entire course of conduct is at issue.

*Id.* at 1161 (quoting *Padilla v. Payco Gen. Am. Credits, Inc.*, 161 F. Supp. 2d 264, 273 (S.D.N.Y. 2001)).  For example, the court in *Joseph* applied the doctrine when the record showed that the defendant debt collector made over 200 calls in a 19-month period, several of which were made directly after the plaintiff instructed the collector not to call anymore.  *Id.* at 1161–62.  Further, the collector there admitted that there "had been no substantial period of cessation" during the 19-month period.  *Id.* at 1162.  On the other hand, "a phone call at midnight[] or a threatening call to a consumer's employer[] are discrete acts" under the FDCPA and therefore not subject to the doctrine.  *Id.* at 1161.

FCO contends that Phillips "does not allege a pattern of phone calls or threatening letters that constitute a pattern of harassment," but rather that FCO's "phone calls independently violate the FDCPA because they sought" to collect a debt unauthorized by law or the lease agreements, which are discrete acts not subject to the continuing violation doctrine.  FCO MSJ at 20–21; Kimball MSJ at 12.

The Court agrees.  Before July 22, 2014, FCO made only four telephone calls in one day (May 14) to Phillips and other known associates or phone numbers, but otherwise contacted Phillips' attorney directly by placing four telephone calls from June 13 through July 14.  *See* Exhibit 9 to Phillips MSJ.  Although these four phone calls were related, "[t]here is simply no indication that the term 'practice' converts related discrete acts into a single unlawful practice for the purpose of a timely filing."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002).  Phillips has not shown that FCO's four phone calls in a single day qualifies as a repeated pattern of behavior akin to that described in *Joseph*.

This is the case even with regard to the alleged section 1692d violations.  Section 1692d prohibits debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," including repeated or continuous phone calls.  15 U.S.C. § 1692d(5).  The very nature of the alleged violation here "constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts."  *Bennett v. Portfolio Recovery Assoc., LLC*, No. CV 12-09827 DSF (AGRx), 2013 WL 6320851, at *2 (C.D. Cal. Nov. 22, 2013) (quoting *Joseph*, 281 F. Supp. 2d at 1161).  Phillips' 1692d claim, and therefore the continuing violation doctrine's application, however, "rest on the volume and pattern of calls, not on the substance of any discrete calls."  *Id.* (citing *Johnson v. JP Morgan Chase Bank*, No. CVF0080081(LJO)(SMSx), 2009 WL 382734, at *5 (E.D. Cal. Feb. 13, 2009)).  Because Phillips has not presented evidence of conduct that qualifies as a repeated pattern of behavior prior to July 22, 2014 that are plausibly or sufficiently related to conduct after that date, the continuing violation doctrine does not apply to the section 1692d claim.

Accordingly, the continuing violation doctrine does not apply to the FDCPA claims, and any violations preceding July 22, 2014 are not actionable.[17]

## 2.   Alleged Section 1692e(2) Violation

The FDCPA is a "broad remedial statute" enacted to:

> eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

*Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir. 2011) (quoting 15 U.S.C. § 1692(e)).

---

[17] Further, FCO appears to have abandoned its statute of limitations defense in its Reply by failing to address Phillips' arguments in that regard.

Section 1692e prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." The "false representation" of "the character, amount, or legal status of any debt[] or any services rendered or compensation which may be lawfully received by any debt collector" is a violation of the statute. § 1692e(2). Accordingly, if the debt FCO sought to collect from Phillips was legally invalid, or if Phillips' legitimate debt was less than what FCO attempted to collect, then FCO violated section 1692e(2). Whether FCO violated section 1692e of the FDCPA is a question of law. *Gonzales*, 660 F.3d at 1061 & n.3.

The FDCPA defines "debt" as follows:

> [A]ny obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

§ 1692a(5). Back rent constitutes a debt under the FDCPA because it "is an obligation that arises only from the tenant's failure to pay the amounts due under the contractual lease transaction." *Dickman v. Kimball, Tirey & St. John, LLP*, 982 F. Supp. 2d 1157, 1164 (S.D. Cal. 2013) (quoting *Romea v. Heiberger & Assoc.*, 163 F.3d 111, 115 (2d Cir. 1998)); *see also Gonzalez v. Law Office of Allen Robert King*, No. CV 16-02231 SJO (KSx), 2016 WL 3638119, at *5 (July 6, 2016) ("An individual obligated to pay rent for his residence qualifies as a 'consumer' [under the FDCPA]." (citing cases qualifying "debt" under the FDCPA)).

Here, however, there is no obligation to pay back rent and, therefore, no debt to lawfully collect. The UD-1 Judgment declared that Phillips had no obligation to pay back rent for the period beginning April 1, 2013 and ending August 29, 2013. Notwithstanding the UD-2 Judgment's contrary conclusion, the Appellate Decision ruled that Phillips never breached his lease and thus never owed back rent. Thus, the state

court's final judgment shows that there was never a legally valid debt arising from Phillips' tenancy for the April to August 2013 timeframe.  That the UD-2 trial court ruled in Archstone's favor does not make the unpaid rent a lawfully collectible debt for FDCPA purposes, because the UD-2 Judgment was not a final judgment.  Rather, the UD-2 Judgment was appealed and the Appellate Division reversed the decision in favor of Archstone.[18]

FCO argues extensively over the uncontroverted fact that Phillips did not pay rent from April 2013 through March 2014 (and, in fact, has since spent some of that money).  That fact is immaterial because collateral estoppel precludes this Court from revisiting the question of whether Phillips is under an obligation to pay April 2013–March 2014 rent, and therefore whether a debt exists for FDCPA purposes.  This is so despite an unlawful detainer action's summary nature.  *See McAlister v. Essex Prop. Trust*, 504 F. Supp. 2d 903, 907 (C.D. Cal. 2007) ("It is true that an unlawful detainer action is summary in the sense that 'only claims bearing directly upon the right of immediate possession are cognizable.'  Claims extrinsic to the right of immediate possession cannot be raised in an unlawful detainer action.  But issues necessary to resolve the right of immediate possession . . . may be raised and conclusively resolved in an unlawful detainer action.  The potential of an unlawful detainer judgment to collaterally estop subsequent litigation has been recognized by the California Supreme Court:  "Applying the traditional rule that a judgment rendered by a court of competent jurisdiction is conclusive to any issues necessarily determined in that action, the courts have held that subsequent [suits] are barred by the prior unlawful detainer judgment." (alteration in original) (quoting *Vella v. Hudgins*, 20 Cal. 3d 251, 256 (1977))).  In both unlawful detainer actions, Archstone sought possession of the premises based on Phillips' alleged

---

[18] This Court's determination that there was no lawful debt to collect is distinct from a factual finding that the subject debt was extinguished due to payment or that the debt collection process was terminated prior to any allegedly unlawful collection activity.  Phillips' cause of action is thus properly within the scope of the FDCPA.  *See Miller v. Bank of Am. Nat'l Ass'n*, 858 F. Supp. 2d 1118 (S.D. Cal. 2012).

failure to pay rent, *see* Exhibits 2, 5 to Landlord RJN at 4, and both actions' final decisions ruled that he owed nothing. Accordingly, this Court will not permit the parties to relitigate that issue.

Further, Defendants' contentions that the Appellate Division ruled that Phillips' unpaid rent remains recoverable are unavailing. The court did explain that a tenant remains obligated to pay rent so long as he resides at the premises, but it did so in rejecting Phillips' argument that res judicata and collateral estoppel barred UD-2 insofar as the action sought a judgment on Phillips' nonpayment of rent for the time period *after* UD-1. *See* Appellate Decision at 2; *see also id.* ("The issue of Phillips' alleged later failure to pay rent, continued occupancy of the premises, and Archstone's subsequent alleged right to possession of the premises were not, and could not have been, litigated in the prior unlawful detainer action."). This is not a *holding* that Phillips' unpaid rent is still owed, but rather a statement that UD-1 could not prevent Archstone from seeking possession of the premises or unpaid rent from late August 2013 through October 2013. Moreover, the Appellate Division's actual holding was that "Phillips's tender of rent due in this unlawful detainer action is fatal to the [UD-2] judgment. . . . Phillips discharged his obligation to pay rent by timely tendering same," and that the UD-2 judgment was "not supported" and was "contradicted by the undisputed substantial evidence that Phillips did not breach the lease." *Id.* at 2, 9.

Similarly, the Appellate Division's remark that a civil action could be filed under California Code section 1951.2 does not constitute a finding that the back rent was actually owed or that Phillips was liable. It merely explained that rather than file a second unlawful detainer action to recover rent payments already sought but not resolved through an earlier unlawful detainer action, Archstone should have filed a civil suit against Phillips to collect allegedly past-due rent. *See id.* at 2. Whether that court would have concluded Phillips was under an obligation to pay is unknown, and the Appellate Division never considered (let alone answered) that question.

FCO points out that AvalonBay referred Phillips' account for collections in May 2014 (two months following Archstone's favorable judgment in UD-2), and the uncontroverted facts show that FCO did not know about Phillips' appeal at that time. Although the FDCPA does not impose upon collectors a duty to independently investigate claims presented by their creditor clients, *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1174 (9th Cir. 2006), the FDCPA is a strict liability statute, *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011).  Accordingly, FCO's intent is irrelevant.

There is, however, a bona fide exception to liability "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).  "The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1006 (9th Cir. 2008). "Thus, to qualify for the . . . defense, [FCO] must prove that (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *McCollough*, 637 F.3d at 948.

FCO did not raise the bona fide error defense (nor did the Defendants whose MSJ briefing FCO joined), and therefore waived it. *See Clark*, 460 F.3d at 1170.  Even if this Court were to consider the defense because FCO argues that its error was unintentional and made in good faith, the Court would conclude that FCO did not satisfy its burden of proof.  FCO has not presented facts or evidence regarding its procedures, if any, aimed at avoiding violations of section 1692e of the FDCPA. *See Reichert*, 531 F.3d at 1006 ("We have held that a debt collector failed to meet its burden under the defense when it did not produce evidence of 'reasonable preventative procedures' aimed at avoiding the errors."); *see also id.* at 1007 ("The fact that the creditor provided accurate information in the past cannot, in and of itself, establish that reliance [on the creditor's representation of

-18-

debt] in the present case was reasonable and act as a substitute for the maintenance of adequate procedures to avoid future mistakes.").

FCO is therefore liable for its violation of section 1692e(2) of the FDCPA after July 22, 2014, and Phillips is entitled to partial summary judgment as to liability on this claim.

### 2.   Alleged Section 1692e(5) Violation

When a debt collector "threat[ens] to take action that cannot legally be taken," the collector violates the FDCPA.  *See* 15 U.S.C. § 1692e(5).  Although FCO moves for summary judgment on Phillips' entire cause of action for violations of the FDCPA, FCO presents no specific argument regarding its alleged violation of section 1692e(5).  FCO MSJ at 2.  Similarly, Phillips' MSJ and Opposition fail to address this particular claim as to FCO.  *See* Phillips MSJ at 9–10 (arguing that the Landlord Defendants' conduct regarding the Pay or Quit notices and during discovery of UD-2 violated this section), 12 (same with regard to the attorney Kimball Defendants's liability for pursuing UD-2).  Thus, neither party has shown that they are entitled to judgment as a matter of law on this claim.

Having conducted independent research on this issue, the Court is inclined to conclude that FCO is liable under section 1692e(5) for its February and March 2015 letters to Phillips, and that Phillips is entitled to partial summary judgment as to liability on this claim.  *See Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1059–60, 1063–64 (9th Cir. 2011) (collection letters indicating the collection agency might submit an obsolete debt to a credit reporting agency satisfied the least sophisticated debtor standard).  Because the parties did not brief this issue, however, the Court will permit supplemental briefing on FCO's liability under section 1692e(5).

### 3.   Alleged Section 1692f Violations

Under section 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," and attempts to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation)

-19-

unless such amount is expressly authorized by the agreement creating the debt or permitted by law" violate the FDCPA.  15 U.S.C. § 1692f(1).  For the reasons stated in the Court's analysis of the section 1692e(2) violation, FCO has violated section 1692f(1).  Thus, partial summary judgment is **GRANTED** in favor of Phillips as to liability on this claim.

### 3.    Alleged Section 1692d Violations

As with the section 1692e(5) claim, neither Phillips nor FCO address FCO's alleged violation of section 1692d of the FDCPA, despite both parties' assertion that they move for summary judgment on the entire FDCPA cause of action.   The Court's own research suggests that the calls placed to Phillips' residence and employer and to Phillips' relatives or associates provide an adequate basis for a factfinder to find a violation under the plain language of section 1692d(5), such that FCO'S motion for summary judgment on this claim should be denied. *See Joseph*, 281 F. Supp. 2d at 1164–65.  Nonetheless, because neither Phillips nor FCO adequately briefed this issue, the Court invites supplemental briefing on this claim.

### B.    California Rosenthal Act Claim Against FCO[19]

This issue is also before the Court on Phillips' and FCO's cross-motions for summary judgment.  Under the California Rosenthal Act, all debt collectors who collect or attempt to collect "a consumer debt" are required to comply with FDCPA provisions of sections 1629b to 1692j.  Cal. Civ. Code § 1788.17 ("Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in [15 U.S.C. § 1692k].").   The Rosenthal Act defines a consumer debt as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction," which is

---

[19] Although originally brought against FCO and the Landlord Defendants, the Court dismissed at the MJP stage the Rosenthal Act cause of action as to the Landlord Defendants.  MJP Order at 5–10, 12.

further defined as "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." *Id.* at § 1788.2(e)–(f). The Court's MJP Order ruled that residential rent collection is not a consumer credit transaction for purposes of the Rosenthal Act. *See* MJP Order at 5–10.

Under the law of the case doctrine, "a court is generally precluded from reconsidering an issue previously decided by the same court." *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005) (quoting *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000)). Although application of this doctrine is discretionary, *id.*, the Court may properly exercise such discretion here because the issue was "decided explicitly . . . in [the] previous disposition." *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990) (alteration in original) (quoting *Liberty Mutual Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982)). Phillips has pointed to no intervening change in the law that would cause this Court to reconsider the issue, and the cases on which he relies are substantially the same as in his MJP briefs. *See id.* Further, the authorities on "creditworthiness" Phillips cites in support of his claim do not persuade the Court that reconsideration is warranted. *See* Opposition at 4, 6–7. That a transaction affects an individual's creditworthiness is not dispositive of whether the transaction is one involving consumer debt.

Thus, for the reasons stated in this Court's MJP Order, residential rent is not a consumer credit transaction. *See* MJP Order at 6–10. Accordingly, any collection activity in this case was not for a "consumer debt" within the meaning of the Act. *See* Cal. Civ. Code § 1788.17. FCO is entitled to summary judgment as a matter of law, and FCO's MSJ is **GRANTED** as to Phillips' cause of action under the Rosenthal Act.

### C.     FCRA Claims Against the Landlord Defendants, FCO, and Equifax

Phillips alleges that Defendants violated sections 1681e; 1681i(a)(1), (a)(2), and (a)(6); and 1681s-2(b) of the FCRA.  SAC at ¶¶ 77–92; Phillips Opposition[20] at 12–14. Specifically, Phillips contends the Landlord Defendants should be held liable for FCO's improper data furnishing activity; and that Equifax violated the FCRA when it failed to notify FCO of Phillips' credit report dispute, send the reinvestigation results to Phillips, and reinvestigate within the statutorily allotted period.  Phillips Opposition at 12–14. Defendants move for summary judgment on all of Phillips' FCRA claims.

The purpose of the FCRA is to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007)); *see* 15 U.S.C. § 1681(b).  Anyone who negligently fails to comply with any FCRA requirement is civilly liable for actual damages sustained and attorney's fees and costs.  *Id.* at § 1681o(a).  If the violation was willful, the defendant is liable for actual damages between $100 and $1,000, reasonable attorney's fees, and costs. *Id.* at § 1681n(a).

Under section 1681e of the FCRA, credit reporting agencies are required to maintain "reasonable procedures" to assure the accuracy of credit reports during the provision of consumer credit information and the preparation of a consumer credit report. *See id.* at § 1681e(b); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333–34 (9th Cir. 1995).  Once a consumer initiates a dispute over his credit report or some information therein, the FCRA requires reporting agencies to conduct an investigation, coined a "reinvestigation" under the statute, into the credit information.  *See* 15 U.S.C. § 1681i.  The FCRA also imposes duties on the furnishers of credit information to ensure that reporting agencies receive accurate credit information.  *See id.* at § 1681s-2.  Courts

---

[20] Phillips filed two opposition documents—one in opposition to the Landlord, Kimball, and FCO MSJs ("Phillips Opposition") [Doc. # 114], and another in opposition to the Equifax MSJ ("Phillips Equifax Opposition") [Doc. # 110].

in this Circuit use the same standard for determining the accuracy of credit reports under sections 1681e, 1681i, and 1681s-2 of the FCRA.  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890–91 (9th Cir. 2010); *Starkey v. Experian Info. Solutions, Inc.*, 32 F. Supp. 3d 1105, 1108 n.4 (C.D. Cal. 2014).

### 1.    Alleged Negligent Violations of the FCRA

#### a.    Alleged Section 1681e Violations (Inaccurate Reports)

Because section 1681e(b) imposes duties on the credit reporting agency and not the data furnisher, neither FCO nor the Landlord Defendants can violate this section of the FCRA.  Thus, their MSJs are **GRANTED** as to this claim as a matter of law.  The Court now addresses Equifax's MSJ as to its alleged violation of section 1681e.

Phillips opposes Equifax's motion on the ground that Equifax violated section 1681e(b) when it generated an inaccurate credit report containing the alleged debt owed to the Landlord Defendants.  Phillips Equifax Opposition at 1–2.  "In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." *Starkey*, 32 F. Supp. 3d at 1108.  The FCRA does not impose strict liability, however, and the credit reporting agency may "escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures."  *Id.*   In the "overwhelming majority of cases," the reasonableness of the agency's procedures, and whether the agency followed them, will be a question of fact for the jury.  *Id.*

Phillips contends that he has made a prima facie showing because the unpaid rent was not actually owed.  Phillips is correct in that he did not actually owe the unpaid rent from April 2013 through March 2014, but that does not mean that the credit report containing the alleged debt was "inaccurate" for purposes of section 1681e liability.  Rather, a report contains inaccurate information if that information is "patently incorrect" or "materially misleading."  *Id.* (quoting *Gorman*, 584 F.3d at 1163).

In *Carvalho v. Equifax Information Services, LLC*, the Ninth Circuit applied this standard, albeit in the reinvestigation context, to a consumer credit report that contained a

collection item that the consumer plaintiff contended she was not legally obligated to pay. 629 F.3d at 891.  Because the past-due account pertained to the plaintiff, did not overstate the amount unpaid, and did not list incorrect dates, the court concluded that the report's inaccuracy was "latent" rather than "patent."  *Id.*  As to whether the information was "misleading," the court concluded it was not because the plaintiff's creditworthiness was properly reflected in the report.  *See id.* ("[A] consumer who avails herself of a good or service but defaults on payment would be considered less creditworthy than one who does not, regardless of how legally sound her reasons for default are.  That she defaulted is certainly relevant to potential creditors and is precisely the type of information that a credit report is meant to supply.").

The *Carvalho* analysis is readily applicable here.  It is uncontroverted that Phillips did not pay rent from April 2013 through March 2014.  That he was not legally obligated to pay that amount constitutes a latent inaccuracy, rather than a patent one, and "credit reporting agencies are not tribunals required to adjudicate disputes regarding the 'legal validity' of a debt."  *Starkey*, 32 F. Supp. 3d at 1110 (quoting *Carvalho*, 629 F.3d at 892); *see also Gauci v. City Mortgage*, No. 2:11-cv-01387-ODW(JEMx), 2012 WL 1535654, at *6 (C.D. Cal. April 30, 2012) ("When a credit reporting agency correctly reports the information furnished by the creditor, the credit report is considered as 'accurate' within the meaning of the FCRA, even when there is an ongoing dispute as to the validity of the debt.").  Thus, Phillips has not made out a prima facie case of a section 1681e(b) violation.

Even assuming the inaccuracy of the credit report, Phillips has not provided this Court with any evidence to raise a triable issue of fact as to the unreasonableness of Equifax's procedures.  "A credit reporting agency does not violate § 1681e(b) 'simply by reporting information that may be inaccurate.'"  *Grigoryan v. Experian Info. Solutions*, 84 F. Supp. 3d 1044, 1067 (C.D. Cal. 2014), *reconsideration denied*, No. CV 13-07450 MMM, 2015 WL 1909584 (C.D. Cal. Apr. 27, 2015) (Morrow, J.) (quoting *Darrin v. Bank of Am., N.A.*, No. 2:12-cv-00228-MCE-KJN, 2014 WL 1922819 at *6 (E.D. Cal.

May 14, 2014)).   Rather, "[i]f a consumer reporting agency accurately transcribes, stores[,] and communicates consumer information received from a source that it reasonably believes to be reputable, and which is credible on its face," the agency avoids liability.  *Id.* (quoting *Saenz v. Trans Union, LLC*, 621 F.Supp.2d 1074, 1081 (D. Or. 2007)).   The reasonableness of the reporting agency's procedures is usually a question of fact for the jury.  *Starkey*, 32 F. Supp. 3d at 1108.  Where, however, the plaintiff "fail[s] to adduce any evidence that [the data furnisher] [is] not [a] reputable source[] or that any of the alleged inaccurate reporting resulted from [the credit reporting agency's] failure to maintain or operate [its] internal database[] in a reasonable manner" there is no triable issue of fact.  *Grigoryan*, 84 F. Supp. 3d at 1068–72.

Here, Equifax has submitted uncontroverted evidence on the procedures it follows before preparing a consumer report, including the procedures in place for determining the reliability of its data furnishers, none of which Phillips disputes.  Moreover, Equifax made a determination, using its procedures, that FCO is a reliable source of information. Phillips' only arguments against the reasonableness of Equifax's procedures under section 1681e relate exclusively to Equifax's reinvestigation procedures under section 1681i—an entirely distinct inquiry.  *See id.* at 1070–71 ("[E]vidence of inadequacies in defendants' reinvestigation procedures under § 1681i . . . is not probative of the fact that defendants have violated § 1681e(b) . . . .") (collecting cases).  Thus, Phillips has failed to raise a triable issue, and Equifax is therefore entitled to partial summary judgment on the section 1681e claim.

### b.   Alleged Section 1681i Violations (Reinvestigation Procedures)

The Court next addresses Defendants' motions for summary judgment as to Phillips' section 1681i claims.  Specifically, Defendants seek summary judgment on the claims under sections 1681i(a)(1)(A), (a)(2)(A), (a)(2)(B), and (a)(6)(A).  As with the section 1681e claim, section 1681i imposes duties on the credit reporting agency and not the data furnisher, such that the FCO and the Landlord Defendants are entitled to summary judgment as a matter of law.  Their motions for partial summary judgment are

therefore **GRANTED** as to all the section 1681i claims.  The Court proceeds to discuss Equifax's summary judgment motion on the section 1681i claims below.

Under section 1681i, when a credit reporting agency receives a consumer dispute as to information in his credit report, the reporting agency has 30 days, from the date the agency receives the dispute, to conduct a "reasonable reinvestigation" to determine "whether the disputed information is inaccurate and record the current status of the disputed information, or delete the [disputed] item" from the consumer's report.  15 U.S.C. § 1681i(a)(1)(A).  Additionally, the reporting agency must, within five business days of receiving the consumer dispute, provide notice of the dispute to the furnisher that provided the disputed information, including "all relevant information" regarding the dispute.  *Id.* at § 1681i(a)(2)(A).  The reporting agency must also "promptly provide" to the furnisher "all relevant information regarding the dispute" that the consumer gives to the agency after the five-day period just mentioned and before the end of the 30-day reinvestigation period.  *Id.* at § 1681i(a)(2)(B).  No later than five business days following the completion of the reinvestigation, the credit reporting agency must provide, by mail, written notice to the consumer of the results.  *Id.* at § 1681i(a)(6)(A).  If the consumer authorizes, the agency may provide the results "by other means available" to the agency.  *Id.*

Here, the uncontroverted facts show that the five- and 30-day deadlines for a reinvestigation under subsections 1681i(a)(1) and (2) were satisfied.  Phillips' counsel mailed a dispute to Equifax on April 7, 2015, which Equifax, through one of its vendors, received on April 12, 2015.  Equifax, again through a vendor, then sent FCO notice of the dispute on April 16 (within the five-day statutory deadline), which FCO received on April 23.  FCO reviewed the materials, determined that the collection information should be deleted from Phillips' credit report, and communicated that to Equifax on May 5.  Equifax contends it deleted the information from its system that day, and Phillip has not presented controverting evidence.  Although FCO's account records show that *FCO* changed Phillips' collection account balance to zero on May 19, that does not controvert

1   Equifax's statement that it deleted the information on its system on May 5. Moreover,
2   Equifax updated Phillips' credit file to reflect the investigation (and notified Phillips'
3   attorney of the commencement of the reinvestigation) within the statutory 30-day period.

4       Phillips makes much of the fact that Equifax relies on vendors and independent
5   contractors as part of its reinvestigation procedures, a fact which Equinox does not
6   dispute. Nonetheless, the reasonableness of Equifax's reinvestigation procedures is a
7   question of fact for the jury, and the fact that the AvalonBay account was immediately
8   reinvestigated and removed within the statutory period does not, by itself, compel the
9   Court to conclude that Equifax's reinvestigation conduct was reasonable as a matter of
10  law. *See Grigoryan*, 84 F. Supp. 3d at 1076. A genuine dispute of material fact thus
11  remains as to the reasonableness of Equifax's reinvestigation procedures.

12      Similarly, Phillips contends that Equifax violated section 1681i(a)(6)(A) because it
13  did not send him the reinvestigation results within five business days after the completion
14  of the reinvestigation. Phillips Equifax Opposition at 4, 5–8. In fact, Phillips argues that
15  the results were never sent because he never received them. *Id.* Equifax presents
16  deposition testimony stating that Equifax, through its vendor, sent Phillips the
17  reinvestigation results six—rather than five—business days after the completion of the
18  reinvestigation. There is no confirmation of receipt in the record. Drawing all inferences
19  in favor of Phillips, as the Court must, there is a triable issue of fact as to Equifax's
20  compliance with section 1681i(a)(6)(A)'s mailing requirement.

21      Notwithstanding the existence of genuine disputes regarding the section
22  1681i(a)(1)(A) and (a)(6)(A) claims, Equifax is entitled to summary judgment on these
23  section 1681i claims because there is no evidence that Phillips was damaged. *See
24  Grigoryan*, 84 F. Supp. 3d at 1078, 1093 (granting summary judgment where plaintiff did
25  not establish damages even though a triable issue of fact existed as to the reinvestigation
26  procedures). "To establish a negligent violation of [section] 1681i . . . , a plaintiff must
27  prove that he incurred actual damages caused by the alleged violations." *Id.* at 1077–78.
28  In this Circuit, "actual damages" under the FCRA include damages for emotional

distress.  *Guimond*, 45 F.3d at 1333.  "[O]bjective evidence" of emotional distress, such as medical or psychological evidence, is not required, and the plaintiff's testimony alone can sufficiently establish such damages.  *Grigoryan*, 84 F. Supp. 3d at 1086–87 (collecting cases).  The plaintiff must, however, proffer evidence linking the emotional distress to the alleged FCRA violations.  *See id.* at 1087–88.  Phillips has not.  Indeed, he does not even address the issue of damages arising from the reinvestigation and its aftermath.

Phillips claims to have suffered "substantial emotional distress from the having [sic] the false FCO/Archstone item on his Equifax credit report."  Phillips Equifax Opposition at 10.  Arguing specifically about his FCRA damages due to Equifax's conduct, Phillips states that this substantial distress occurred when he looked at a credit report "in March 2014 when he had to move out" of the Archstone property.  *Id.*  Because the reinvestigation, however unreasonable, indisputably occurred in April 2015, any distress Phillips suffered in March 2014 is insufficiently related to Equifax's subsequent alleged FCRA violations to establish a negligent violation of section 1681i.  The Court therefore **GRANTS** the Equifax MSJ as to Phillips' FCRA claims arising under section 1681i.

### c.    Alleged Section 1681s-2(b) Violations

Section 1681s-2(b) imposes duties on furnishers of credit information, similar to those in section 1681i, which are triggered by the notice of a consumer dispute.  Specifically, once the furnisher receives notice of a consumer dispute, it must conduct an investigation, review all relevant information provided by the reporting agency, report results of the investigation to the reporting agency and, if the investigation reveals that disputed information is "incomplete or inaccurate," to other consumer reporting agencies.  § 1681s-2(b)(1).  The furnisher must do all of this within 30 days.  *See id.* at § 1681s-2(b)(2).

As explained above and in the factual background, FCO complied with section 1681s-2(b).  It received notice of Phillips' dispute on April 23, and it conducted its investigation and instructed Equifax to delete the collection account on May 5, well

-28-

within 30 days of notice of Phillips' dispute.  Moreover, FCO changed Phillips' account status, as reported to credit reporting agencies, on May 19—also within the 30-day statutory deadline.  To the extent that FCO was required to change Phillips' account status, as reported to the agencies, within 30 days of Equifax's receipt of Phillips' dispute, rather than within 30 days of FCO's receipt of notice of Phillips' dispute (*i.e.*, May 16), *see id.* at § 1681s-2(b)(2), the Court concludes that any delay of three days is *de minimis*, and that Phillips has not shown actual damages arising from the delay.

The FCO MSJ is therefore **GRANTED** as to this claim.  Accordingly, even if circumstances giving rise to vicarious liability under the FCRA were present here, which the Court need not decide, the Landlord Defendants are also entitled to summary judgment.

### 2.     Alleged Willful Violations of the FCRA

"Knowing noncompliance of the FCRA or reckless disregard of the requirements of the FCRA constitute a willful violation."  *Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1278 (N.D. Cal. 2014) (quoting *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 57 (2007)).  Phillips has failed to adduce any evidence raising a genuine issue for trial as to Equifax's and FCO's knowing or reckless violation, if any, of the FCRA.  Rather, the uncontroverted evidence shows that the FCRA defendants complied—or intended to comply—with the statute's reinvestigation requirements and that any violations thereof resulted from, at worst, negligent conduct.  *See id.* ("[A] company subject to [the] FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." (alterations in original) (citing *Safeco*, 551 U.S. at 69)).  Thus, the FCO and Equifax MSJs are **GRANTED** as to the FCRA claims to the extent they are premised on willful conduct.

### D.      Retaliatory Eviction by the Landlord Defendants

Under California Civil Code section 1942.5, a landlord may not bring an action to recover possession of the premises "for the purpose of retaliating against the lessee because he . . . has lawfully and peaceably exercised any rights under the law."  Cal. Civ. Code § 1942.5(c).  Phillips contends that the Landlord Defendants violated this section of the California Civil Code when it pursued UD-2 in retaliation for Phillips' success in UD-1.

In support, Phillips points to email excerpts wherein AvalonBay expresses disappointment with losing UD-1, frustration over the prospect of losing UD-2, and its misinterpretation of the Appellate Decision.  *See* Phillips Opposition at 17.  Although these emails do not show that UD-2 was initiated because Phillips prevailed in UD-1, a reasonable jury may infer from those emails and other evidence in the record that the Landlord Defendants had a retaliatory motive.  Accordingly, the Court **DENIES** the Landlord Defendants MSJ as to retaliatory eviction.

### E.      Set-off Defense for the Landlord Defendants)

The Landlord Defendants contend that it has established a right to setoff under California Civil Code section 431.70 because Phillips never paid rent from April 2013 through March 2014.  They now move for summary judgment on this defense.  As discussed, the state court ruled that Phillips did not owe rent for that period, and this Court will not permit relitigation of that issue.  Accordingly, the Landlord Defendants are not entitled to judgment as a matter of law on the setoff defense.

## VI.

## CONCLUSION

In light of the foregoing, the Court rules as follows:

1.      The Kimball MSJ is **DENIED as moot** due to the effect of the MJP;

2.      Phillips' MSJ is **GRANTED** as to the cause of action brought against FCO for violation of sections 1692e(2) and 1692f(1) of the FDCPA;

3.      The FCO MSJ is **GRANTED** as to Phillips' causes of action for violations of the California Rosenthal Act and the FCRA;

4.      The Equifax MSJ is **GRANTED** in its entirety;

5.      The Landlord MSJ is **GRANTED** as to Phillips' cause of action for violations of the FCRA;

6.      The Landlord MSJ is **DENIED** as to Phillips' cause of action for retaliatory eviction and their setoff defense; and

7.      The Court defers ruling on the FCO and Phillips MSJs as to Phillips' cause of action under the FDCPA in connection with sections 1692e(5) and 1692d. FCO and Phillips shall file simultaneous supplemental briefing (five pages per side) as to FCO's liability under these sections of the FDCPA by no later than January 19, 2017.

As a result of this Order, the following issues remain for trial:  (1) Phillips' cause of action against the Landlord Defendants for retaliatory eviction; and (2) damages as to FCO's violations of the FDCPA.

**IT IS SO ORDERED.**

DATED:  January 13, 2017

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE