1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTOPHER PHILLIPS, | ) Case No. CV 15-5559 DMG (PLAx) |
| Plaintiff, | ) **ORDER RE PLAINTIFF'S AND** |
| v. | ) **DEFENDANT FAIR COLLECTIONS** |
| ARCHSTONE SIMI VALLEY LLC, et al., | ) **& OUTSOURCING OF NEW** |
| Defendants. | ) **ENGLAND, INC.'S MOTIONS FOR** |
| | ) **SUMMARY JUDGMENT AND** |
| | ) **PARTIAL SUMMARY JUDGMENT** |
| | ) **[94, 102]** |

This matter is before the Court on Defendant Fair Collections & Outsourcing of New England, Inc.'s ("FCO") and Plaintiff Christopher Phillips' motions for summary judgment ("FCO MSJ") [Doc. # 102] and partial summary judgment ("Phillips MSJ") [Doc. # 94]. The Court has duly considered the parties' supplemental briefs and the evidentiary record. For the reasons set forth below, Phillips' MSJ is **GRANTED** as to his claim against FCO under 15 U.S.C. section 1692e(5), and both the Phillips and FCO MSJs are **DENIED** as to Phillips' claim against FCO under 15 U.S.C section 1692d(5).

# I.

## PROCEDURAL BACKGROUND

On January 13, 2017, this Court issued an order on all parties' cross-motions for summary judgment and partial summary judgment ("MSJ Order"). [Doc. # 174.] The Court deferred ruling on Phillips' claims against FCO brought under sections 1692d and 1692e(5) of the Fair Debt collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, on which both Phillips and FCO sought summary judgment, because neither party addressed these alleged violations in their MSJ papers. MSJ Order at 31; FCO MSJ at 2, 8 (seeking judgment as a matter of law on Phillips' cause of action against FCO under the FDCPA); Phillips MSJ at 2, 7, 22–23 (moving for partial summary judgment against FCO on all violations of the FDCPA). The Court ordered simultaneous supplemental briefing on these issues, which the parties submitted on January 19, 2017. [Doc. ## 84, 85.]

# III.

## DISCUSSION[1]

Currently before the Court are Phillips' and FCO's cross-motions for summary judgment and partial summary judgment as to the remaining FDCPA claims. As explained in the MSJ Order, the FDCPA was enacted in part to "eliminate abusive debt collection practices by debt collectors." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir. 2011) (quoting 15 U.S.C. § 1692(e)). Such prohibited practices include repeated or continuous phone calls undertaken with the intent to annoy, abuse, or harass, the recipient; and threatening to report legally obsolete debts to a consumer credit reporting agency. *See id.* at 1059–64 (liability under section 1692e(5) where debt collection agency sent letter to consumer that threatened to report obsolete debt to credit reporting agency); *Joseph v. J.J. Mac Intyre Cos.*, 238 F. Supp. 2d 1158, 1167–69 (N.D.

---

[1] The uncontroverted facts and legal standard are familiar to this Court, and need not be repeated here. The Court incorporates by reference the Factual Background and Legal Standard sections of the MSJ Order. *See* MSJ Order at 3–11.

Cal. 2002) (triable issue of fact existed as to violation of section 1692d(5) in connection with multiple phone calls made to debtor within limitations period).

As an initial matter, FCO argues that Phillips never asserted violations of sections 1692d(5) or 1692e(5) as to FCO in his SAC.  FCO Suppl. Br. At 2–3, 5 [Doc. # 185]. This argument fails.  First, FCO's supplemental brief excerpts two paragraphs of the SAC in which Phillips directly alleges that the debt collection agency violated these FDCPA sections.  *See id.* at 2–3 (quoting SAC at ¶¶ 51 ("From August 2014 to present, the Landlord, Kimball defendants, *and FCO*, caused a collection item to be placed on Plaintiff's credit reports falsely alleging that he owes [the legally invalid Archstone debt]." (emphasis added) (citing § 1692e(5))); *id.* at 3 (quoting SAC at ¶ 53 ("The aforesaid acts taken together on part of the Landlord and Kimball defendants, *and FCO*, violated 15 U.S.C. § 1692d which prohibits a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of debt." (emphasis added))).  Moreover, the above-quoted allegations appear in the SAC following a factual presentation of FCO's alleged conduct, including that FCO "sent Phillips several debt collection letters each of which demanded that he pay a debt which was not owed to the Landlord defendants," and "contacted Phillips by phone on numerous occasions and demanded that he pay a debt which was not owed to the Landlord defendants."  SAC at ¶¶ 49, 50.  In fact, immediately after asserting in its supplemental brief that "[f]requent and harassing calls is [sic] not a subject of [Phillips'] FDCPA claim," FCO quotes the SAC's allegation that FCO contacted him "by phone on numerous occasions."  FCO Suppl. Br. at 5 (quoting SAC at ¶ 49).  FCO's argument that Phillips did not plead the FDCPA claims at issue are belied by the SAC.

FCO was on notice of these claims by virtue of the relevant facts being pleaded in the SAC, which is all that Rule 8(a) requires.  *See Alvarez v. Hill,* 518 F.3d 1152 1157 (9th Cir. 2008) ("Notice pleading requires the plaintiff to set forth in his complaint claims for relief, not causes of action, statutes or legal theories."); *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("A court may grant such a dismissal only

where the plaintiff fails to present a cognizable legal theory or to allege sufficient facts to support a cognizable legal theory."); *cf. Pruitt v. Cheney*, 963 F.2d 1160, 1164 (9th Cir. 1991), *amended* (May 8, 1992) (plaintiff should have been permitted to assert a claim at the time of trial that was not specifically alleged in the complaint).  Accordingly, FCO's alleged section 1692d(5) and 1692e(5) violations are properly before this Court.

The Court now turns to the propriety of an award of summary judgment or partial summary judgment as to these claims.

**A.   FCO's Alleged Violations of Section 1692d(5)**

**1.   Section 1692d(5) Liability in this Circuit**

Section 1692d prohibits a debt collector from "engag[ing] in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt," including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5).  The FDCPA is generally a strict liability statute, but in certain areas of the Act, such as section 1692d, "Congress took care to require an element of knowledge or intent." *Reddin v. Rash Curtis & Assocs.*, No. 2:15-01305 WBS CKD, 2016 WL 3743148, at (3 (E.D. Cal. July 13, 2016) (quoting *Clark v. Capital Credit & collection Servs., Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006)) (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 594 (2010)).

Whether a debt collection agency's conduct was intended to annoy, abuse, or harass the debtor is generally a question of fact, and the agency's intent "may be inferred from circumstantial evidence such as the nature, pattern, and frequency of debt collection calls." *McGowan v. Credit Mgmt. LP*, No. 2:14-cv-00759-APG-VCF, 2015 WL 5682736, at *4 (D. Nev. Sept. 24, 2015) (quoting *Crockett v. Rash Curtis & Assocs.*, 929 F. Supp. 2d 1030, 1032 (N.D. Cal. 2013).  The Court also considers the alleged section 1692d(5) violation under the "least sophisticated debtor" standard, which means that the claims "should be viewed from the perspective of a consumer whose circumstances

1    makes him relatively more susceptible to harassment, oppression, or abuse." *Joseph*, 238

2    F. Supp. 2d at 1168 (quoting *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir.

3    1985)).   The burden of establishing FCO's section 1692d(5) liability falls on Phillips.

4    *See Kerwin v. Remittance Assistance Corp.*, 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008).

5         District courts in this Circuit appear to be in agreement that evidence of the volume

6    of calls from collector to debtor, alone, is insufficient to raise a genuine dispute of fact as

7    to the agency's intent to annoy, abuse, or harass.   *Schwartz-Earp v. Advanced Call Ctr.*

8    *Techs., LLC*, No. 15-CV-01582-MEJ, 2016 WL 899149, at *4 (N.D. Cal. March 9, 2016)

9    (stating this proposition and collecting cases); *Lopez v. Professional Collection*

10   *Consultants*, No. CV 11-3214 PSG (PLAx), 2013 WL 708701, at *3 (C.D. Cal. Feb. 26,

11   2013) (at least 12 calls in a little over one month but no evidence of multiple calls in a

12   day, calls at debtor's place of employment, calls immediately after debtor hung up, or

13   calls at odd hours); *Jones v. Rash Curtis & Assocs.*, No. C 10-00225 JSW, 2011 WL

14   2050195, at *3 (N.D. Cal. Jan. 3, 2011) (179 calls in one year alone insufficient to

15   establish conduct intended to harass, absent evidence that collection agency called

16   immediately after debtor hung up, used unprofessional or misleading language during

17   calls, called at improper or inconvenient times or places); *Arteaga v. Asset Acceptance,*

18   *LLC*, 733 F. Supp. 2d 1218, 1224–25, 1229 (E.D. Cal. 2010) (debt collector records

19   showed 18 phone calls in five months, while debtor alleged "daily" or "near daily" phone

20   calls but no additionally harassing conduct, such as repeated calls after a request to cease

21   calling, call-backs after debtor hung up, multiple calls in one day, calls to employer or

22   other associates, or calls at odd hours).

23        Where there is evidence of other conduct, such as repeated calls in a single day;

24   calls made after the debtor's request to cease calling; calls placed to debtor's place of

25   employment, family's home, or other places outside the debtor's home; or calls placed at

26   odd hours, courts have found liability or a triable issue of fact.   *See Fox v. Citicorp Credit*

27   *Servs., Inc.*, 15 F.3d 1507, 1516–17 (9th Cir. 1994) (debt collector was intimidating and

28   threatening in phone calls, and called debtor at work after twice being asked not to call

her place of employment); *Bennett v. Portfolio Recovery Assocs., LLC*, No. CV 12=09827 DSF (AGRx), 2013 WL 6320851, at *3 (C.D. Cal. Nov. 22, 2013) (on 20 occasions, collector called twice in one day, and on eight occasions, collector called three times in one day); *Johnson v. Portfolio Recovery Assocs., LLC*, No. 12-4261 PSG (AJWx), 2013 WL 10156241, at *8 (C.D. Cal. June 24, 2013) (triable issue where there was a high volume of calls and evidence of call-backs after debtor hung up, multiple calls per day, and calls made after 10 PM); *Stirling v. Genpack Servs., LLC*, No. 2:11-cv-06369-JHN-MANx, 2012 WL 952310, at *24 (C.D. Cal. March 19, 2012) (649 calls over 115 days, averaging five to six calls per day); *Jiminez v Accounts Receivable Mgmt., Inc.*, No. CV 09-9070-GW (AJWx), 2010 WL 5829206, at *5 (C.D. Cal. Nov. 15, 2010) ("unacceptable pattern of calls" includes calling outside hours of 8 AM to 8 PM, regular calls multiple times per day, calling debtor's family members or other places outside debtor's home); *Fausto v. Credigy Servs Corp.*, 598 F. Supp. 2d 1049, 1056 (N.D. Cal. 2009) (over 90 calls to debtor's home, immediate call-backs after debtor hung up on debt collector, debt collector failed to identify itself on phone); *Sanchez v. Client Servs., Inc.*, 520 F. Supp. 2d 1149 (N.D. Cal. 2007) (54 calls to and 24 messages left at debtor's place of employment); *Kuhn v. Account Control Tech., Inc.*, 865 F. Supp. 1443, 1453 (D. Nev. 1994) (six calls in 24 minutes, and two call-backs within five minutes at debtor's place of employment after debtor hung up on debt collector).

## 2.  A Triable Issue Exists as to FCO's Section 1692d Liability

As explained in the MSJ Order, only calls made on and after July 22, 2014 are actionable under section 1692d.  *See* MSJ Order at 12–14.  FCO's account ledger, related to Phillips' supposed debt, shows that from July 25, 2014 through April 2015,[2] 37 or 39 calls were placed in connection with Phillips' debt account.  *See* Exhibit A to Sobata Decl. ("FCO Phillips Ledger") at 5–10 [Doc. # 102-14].  While this number of calls pales

---

[2] As stated in the MSJ Order, Phillips testified that he received no calls after March 2015.  The FCO ledger shows, however, that four calls were placed (Phillips did not answer and there is no indication a message was left) in April 2015.  *See* FCO Phillips Ledger at 10.

1    in comparison to the hundreds of calls made in other cases where the court identified a
2    genuine dispute of fact, FCO's account ledger nonetheless reveals a triable issue here
3    because of FCO's persistent calls after being instructed to stop calling and because of the
4    many instances in which FCO called Phillips multiple times in one day and called
5    Phillips' employer after being instructed to stop calling.

6           On July 24, 2014, FCO twice called Phillips and was told on the second call not to
7    call again. *See id.* at 5; Sobata Depo. at 37:11–38:14 (FCO testifies it was instructed not
8    to call Phillips again, which "generally" means that it cannot call the debtor again) [Doc.
9    # 95-11]; *id.* at 39:4–12 (notations in ledger indicate FCO is "not going to contact this
10   person [Phillips] anymore"). On January 16, 2015, FCO called Phillips twice. FCO
11   Phillips Ledger at 6. From January 20 through 27, FCO called Phillips' place of
12   employment once on the 22nd and once on the 23rd, and called Phillips' residence once
13   on the 22nd, once on the 23rd, twice on the 26th, and twice on the 27th. FCO Phillips
14   Ledger at 6, 9; Sobata Depo. at 49:19–50:2 (testifying as to calls to Phillips' residence
15   and employer on January 23); *id.* at 50:11–50 (testifying as to calls to Phillips home on
16   January 27). On February 9, 2015, FCO called Phillips residence three times and his
17   employer four times (of which one call was to what appears to be a second place of
18   employment, which told FCO not to call again). FCO Phillips Ledger at 10; Sobata
19   Depo. at 52:17–24 (testifying as to calling Phillips' residence and leaving a voicemail).
20   FCO again called Phillips' residence once a day on February 11, 16, and 17. On the 18th,
21   FCO called Phillips' residence and another number associated with him, which appears to
22   have been dialed in connection with Phillips' debt before, and the person who answered
23   the associated number instructed FCO not to call back and hung up. FCO Phillips Ledger
24   at 10; Sobata Depo. at 54:8–16 (testifying as to call to other number). After February 18,
25   2015, FCO called Phillips once per day on February 23, March 18, April 9, and April 22,
26   and FCO called him twice on April 14. FCO Phillips Ledger at 10.

27          On more than one occasion, FCO's multiple calls in a single day to Phillips's
28   residence and employer were placed in a relatively short time span. For example, on

January 16, 2015, FCO called Phillips twice between 11:15 AM and 12:28 PM. *Id.* at 6; *see also id.* at 9 (January 27 calls)10 (February 9 calls).[3]  Unlike cases where the plaintiff only presents evidence as to the volume of calls placed, there is support in the record for Phillips' allegations of a section 1692d(5) violation, particularly when considered from the perspective of a consumer who is relatively more susceptible to harassment. *Cf. Jones*, 2011 WL 2050195, at *3 (granting summary judgment in favor of collection agency where "[b]eside the frequency of the calls, there [was] nothing in the record to sustain a claim for intentional harassment").  The Court therefore **DENIES** summary judgment and partial summary judgment on this issue.

**B.   FCO's Alleged Violations of Section 1692e(5)**

In the MSJ Order, the Court concluded that the debt FCO sought to collect was invalid, in part because the state court's conclusion that Phillips did not breach his lease agreement, and therefore owed no debt to the Landlord Defendants, barred this Court from reconsidering the issue.  *See* MSJ Order at 15–17.  When a debt collector "threat[ens] to take action that cannot legally be taken," including a threat to furnish a legally invalid debt to a credit reporting agency, the collector violates the FDCPA.  *See* 15 U.S.C. § 1692e(5); *Gonzales*, 660 F.3d at 1064.  Whether FCO violated section 1692e(5) is a question of law.  *Id.* at 1061 & n.3.  Here, both Phillips and FCO seek summary judgment as to FCO's liability under section 1692e(5).

Courts in this Circuit follow a two-pronged test to determine whether a debt collector has violated this section:  (1) "whether, from the perspective of the least sophisticated debtor, the debt collector threatened legal action;" and (2) "whether the debt collector could legally take such action and had the intent to do so."  *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1077 (E.D. Cal. 2008); *see also Gonzales*, 660 F.3d at 1062 (least sophisticated debtor standard "is 'designed to protect consumers of below

---

[3] On the night of January 22 and the morning of January 23 and 26, Phillips contacted FCO, which also raises a dispute as to FCO's intent in calling him on January 23 and 26.  Whether those calls were intended to return Phillips' calls or were part of a larger pattern of harassing or abusive behavior is a factual question for the jury.

-8-

average sophistication or intelligence,' or those who are 'uninformed or naïve'" (quoting *Duffy v. Landberg*, 215 F.3d 871, 874–75 (8th Cir. 2000))).  "[A] threat need not be express: it can be implied."  *Gold v. Midland Credit Mgmt., Inc.*, 82 F. Supp. 3d 1064, 1074 (N.D. Cal. 2015) (alteration in original) (quoting *Gonzales*, 660 F.3d at 1064).  Accordingly, the Court considers whether FCO's communications "could be construed by the least sophisticated debtor as threatening to report obsolete debt."  *Gonzales*, 660 F.3d at 1062.

Because the Court is not aware whether FCO indicated to Phillips over the phone that it may report his debt to any credit reporting agencies, the Court focuses on the letters FCO sent in February and March 2015.  The March 2015 letter states on the first page that Phillips may pay $15,176.57 to settle the "amount due" in full, and to "[c]all by 3/31/15 to take advantage of this offer."  Exhibit 9 to Phillips MSJ at 2 [Doc. # 95-10].  The letter provides further, "Your [Phillips'] account has already been reported or is scheduled to be reported to one or all of the following national credit reporting bureaus: [bureaus listed by name]."  *Id.*  The second page provides that "a negative credit report reflecting on your credit report may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations."  *Id.* at 3.  Similarly, the February 2015 letter seeks to collect the "verifi[ed]" debt of $25,294.28.  *Id.* at 17.  The letter goes on to provide that "[Y]ou [Phillips] are hereby notified that a negative credit report reflecting on your credit report may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations."  *Id.* at 18.

The Ninth Circuit in *Gonzales v. Arrow Financial Services, LLC* held that language even less overtly threatening than this qualified as a "threat" for purposes of section 1692e(5) under the least sophisticated debtor standard.  *See* 660 F.3d at 1059–60, 1062–65.  There, the collector sent the plaintiff a letter, which offered a settlement of a seven-year-old past-due debt and mentioned credit bureaus three times.  In the first instance, the letter stated, "Upon receipt of the settlement amount and clearance of funds, and *if we are reporting the account, the appropriate credit bureaus will be notified that*

*this account has been settled*.”   *Id.* at 1059.   The letter also requested the plaintiff to enclose the settlement payment, return the letter to the collector, and mark a box (in the letter) that stated, “When my funds clear, and *if you are reporting the account, you will notify the appropriate credit bureaus of this settlement*.”   *Id.* at 1060.   On the back of the letter was a notice, which provided that “a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.”   *Id.*

The collector argued that the letter “promise[d] only to make a ‘positive’ report indicating full payment of the debt once payment cleared,” such that the letter “could not reasonably be read to imply a threat to make a ‘negative’ report in the event of nonpayment.”   *Gonzales*, 660 F.3d at 1064.   The Ninth Circuit rejected this argument because, logically, the collector could only make a positive report once it had already (or would shortly) report the outstanding debt to a credit reporting agency.   *Id.*   Accordingly, it held that the least sophisticated debtor could conclude that if he failed to pay the settlement amount (or the entire debt amount) in full the collector would put a negative record in his credit report (or decline to remove the negative record already placed).   *Id.* Because the seven-year-old debt was obsolete and thus could not be reported, the collector violated section 1692e(5).   *Id.*

In contrast, in *Gold v. Midland Credit Management, Inc.*, the district court determined that there was no section 1692e(5) violation in connection with a collection letter and brochure.   82 F. Supp. 3d at 1067, 1074.   The debt collection agency sent the plaintiff a collection letter, which contained in the top right-hand corner the statement, “We can help you reduce your past due balance . . . and get your finances back on track.” *Id.* at 1067.   To the right of the body text rested a list, in bullet point form, summarizing the company’s offer, including the statement, “Your credit report will be updated with each payment made, and once you’ve completed your agreed-upon payments to settle the account, your credit report will be updated as ‘Paid in Full’!”.   *Id.*   As for the brochure, which was entitled, “Why paying your bills is so important to a good credit report,” it

-10-

contained the following statement: "Having a good credit report is important . . . We can help you get your finances back on track." *Id.*  The court ruled that the letter was "informational" and that the least sophisticated debtor would interpret the language "as a prudential reminder, not as a threat to take action." *Id.* (quoting *Wade v. Regional Credit Assoc.*, 87 F.3d 1098 (9th Cir. 1996)).

The language here is more akin to *Gonzales* than *Gold*.  As in *Gonzales*, the least sophisticated debtor would construe the February and March 2015 letters as threatening the legal act of reporting the subject debt to a credit reporting agency.  Such a construction would be neither "bizarre" nor "idiosyncratic."  *Gold*, 82 F. Supp. 3d at 1073 ("[W]hile protecting naïve consumers, the [least sophisticated debtor] standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F. 3d 131, 136 (4th Cir. 1996))).  Indeed, the February letter states in no uncertain terms that failure to pay one's credit obligations may result in a negative credit record being reported to a credit reporting agency.  The March letter also plainly states that the debt has already been or is about to be reported.  And, in fact, FCO reported the debt to credit reporting agencies as early as mid-February 2015.

Because there was no legally collectible debt to report, the FDCPA precludes FCO's threat to undertake such action.  FCO argues that part of the debt sought to be collected covered "move-out charges and other monies," which Phillips owed under the lease agreement and did not pay, and it contends further that "there has been no determination on whether [Phillips] owed" such a debt, such that FCO did not threaten to take any action it could not legally take.  FCO Suppl. Br. at 4.  As this Court explained earlier, however, there has already been a determination that Phillips did not breach his lease, and collateral estoppel bars this Court from reconsidering the issue.[4]

---

[4]  Furthermore, the bulk of the debt that was the subject of the collection letters concerned Phillips' unpaid back rent.  *See* Exhibit 9 to Phillips MSJ at 19.  Even if the Court could reconsider the issue of Phillips breach of the lease agreement as to the move-out charges and other monies, FCO still

In sum, both prongs of the section 1692e(5) test are satisfied here.

### III.

### CONCLUSION

In light of the foregoing, the Court **GRANTS** Phillips' motion for partial summary judgment as to FCO's liability on the section 1692e(5) claim and **DENIES** the parties' motions for summary judgment and partial summary judgment on the section 1692d(5) claim.  For the same reasons that it grants Phillips' motion for partial summary judgment against FCO on the section 1692e(5) claim, the Court **DENIES** FCO's motion for summary judgment on that claim.

As a result of the summary judgment and partial summary judgment rulings in this case, the following issues remain for trial:  (1) Phillips' cause of action against the Landlord Defendants for retaliatory eviction, (2) Phillips' cause of action against FCO for violations of section 1692d(5) of the FDCPA, and (3) actual damages as to FCO's violations of the FDCPA.

**IT IS SO ORDERED.**

DATED:  January 31, 2017

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE

---

would be found liable for violating section 1692e(5) insofar as the letters threatened to report the uncollectible and unreportable debt.